UNITED STATES of America,
Plaintiff-Appellee,

v.

George R. CHUKE, Defendant-Appellant.

No. 76–2343.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 17, 1977.

Decided April 22, 1977.

Shelby C. Kinkead, Jr., Federal Defender, Joseph L. Famularo, Lexington, Ky., for defendant-appellant.

Eldon Webb, U. S. Atty., James E. Arehart, Lexington, Ky., for plaintiff-appellee.

Before EDWARDS and CELEBREZZE, Circuit Judges, and TAYLOR *, District Judge.

CELEBREZZE, Circuit Judge.

In this appeal we are asked to decide whether the failure of law enforcement officers to exploit a perceived opportunity to obtain a search warrant, given concededly sufficient probable cause, vitiates a subsequent search without a warrant of a vehicle prompted by exigent circumstances. George R. Chuke (Chuke) appeals from the denial by the District Court of his pre-trial motion to suppress a gun recovered during the warrantless search of his · car. He stands convicted, after a jury trial, of possessing a firearm in interstate commerce, as a previously convicted felon, in violation of 18 U.S.C. App. § 1202(a)(1).

On the morning of May 20, 1976, Frank Rapier, a special agent for the Bureau of Alcohol, Tobacco and Firearms, received a tip from a confidential informant known by him to have a history of reliability. The informant alleged the following facts based upon personal observation: 1) Chuke was in possession of three or four guns, one of which the informant had seen on May 20th· 2) Chuke was a convicted felon; 3) he was staying at the Family Motor Inn in Erlanger, Kentucky, with a female having the last name Voories; 4) he was driving a new, black 1976 Mercury Cougar automobile.

Agent Rapier promptly verified that Chuke was a previously convicted felon and obtained a photograph of him. At approximately midnight of the same day, he and one or more state narcotics agents placed the Family Motor Inn under surveillance.

* The Honorable Robert L. Taylor, Judge U. S. District Court, Eastern District of Tennessee, sitting by designation.

They then confirmed, through inquiry of the motel clerk, that one Becky Voories was registered in room 109 and that a "tall gentleman" was staying with her.[1] At approximately 1:30 a. m. on the morning of May 21st, they observed a black, 1976 Mercury Cougar parked in close proximity to room 109.

At approximately 3:00 a. m., one of the state narcotics agents left the scene and contacted the City Attorney of Erlanger, Kentucky, to inquire if a search warrant could be obtained for the motel room and the car.[2] He was advised that there was insufficient probable cause for issuance of a warrant at that time because the officers had failed to establish that the car belonged to Chuke[3] or that he was the man allegedly staying in room 109. Immediately thereafter, the surveillance team was informed by a local police officer that a woman, believed to be Becky Voories' mother, had called the police and had complained that her daughter was under the influence of drugs and was in the company of George Chuke. At approximately 7:00 a. m., Agent Bobby Wiley of the Bureau of Alcohol, Tobacco and Firearms relieved Agent Rapier at the motel and was fully apprised by him of all the earlier developments.

At 11:00 a. m., Chuke was observed for the first time approaching the black Mercury Cougar from an area of the motel in the vicinity of room 109.[4] During the next half hour he made five trips to the car carrying clothes, boxes and other items which he loaded into the trunk and back seat. On two of the trips he brought briefcases to the car and during another he was observed by Agent Wiley to place a black object which appeared to be a gun under the driver's seat. Chuke then approached the car in the company of a young woman. After a brief conversation, the woman walked in the direction of the motel office and he got into the car and began to drive toward the exit of the motel parking lot.

At this point, the officers, who had been loath to approach the suspect while he had an opportunity to retreat to the motel room, moved in, removed Chuke from the car and searched it. Inside a gray briefcase located on the floor immediately behind the driver's seat, Agent Wiley found a loaded semi-automatic pistol. The black object under the seat turned out to be a blackjack.

It is undisputed that, at the time that Chuke was stopped while driving toward the exit of the motel parking lot, exigent circumstances existed which legally justified the search of his vehicle without a warrant. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). We also accept as uncontroverted Chuke's assertion on appeal that, at least eight hours prior to the search, the arresting officers were armed with compelling probable cause upon which a valid search warrant could have been issued. That they were aware of the propriety of obtaining a warrant at that time is evidenced by the fact that one of the assisting state narcotics agents contemporaneously sought legal advice on the subject. We need not decide whether the informer's tip provided self-sufficient probable cause, under the two-pronged standard articulated in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), because we find that, by 3:00 a. m. on the morning of Chuke's arrest, the reliability of the information had been confirmed by Agent Rapier's personal verification of its key details. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

1. The officers never showed the motel clerk Chuke's photograph because they distrusted the establishment and were afraid that Chuke would be forewarned of their presence.

2. The federal agents made no independent effort to contact a federal magistrate in pursuit of a warrant.

3. The car had temporary license plates which were not directly traceable to Chuke.

4. The officers' surveillance point did not permit them to observe the doorway of room 109.

We agree with the Government that upon the strength of the reliable informer's tip, once Chuke's observed conduct manifested his intention to permanently depart from the motel, prudent police tactics demanded that his moving vehicle be stopped and searched for weapons. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The question before us, however, is whether this otherwise permissible intrusion should be vitiated because failure to obtain a warrant during the eight hours following corroboration of the tip permitted future exploitation of predictable exigent circumstances,[5] thereby frustrating the warrant requirement.

 Whether a warrantless search violates the Fourth Amendment depends on the facts and circumstances of each case. *See e. g., Cooper v. California,* 386 U.S. 58, 59, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). A neglected, reasonable opportunity to procure a search warrant no longer constitutes a per se fatal defect, but is just one of the relevant facts and circumstances to be considered. *Cady v. Dombrowski,* 413 U.S. 433, 446, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Niro v. United States,* 388 F.2d 535, 539, (1st Cir. 1968). However, Chuke contends that here the officers' flouting of the warrant requirement was so egregious as to bring the case within the ambit of our past decisions condemning warrantless searches incident to pretext arrests. *United States v. James,* 378 F.2d 88 (6th Cir. 1967); *United States v. Harris,* 321 F.2d 739 (6th Cir. 1963).[6] He urges us to adopt the view expressed by the First Circuit in *Niro v. United States, supra,* that:

> Proceeding without a warrant is not to be justified, as the Government suggests here, by the fact that by the time the officers act, dispatch is necessary to avoid flight or injury to person or property.

Haste does not become necessary in the present sense if the need for it has been brought about by deliberate and unreasonable delay. 388 F.2d at 540.

The Government responds by pointing out that the exigent circumstances at the time of the search were real and immediate and that the officers' response to them was reasonable. It concludes that the Supreme Court's recent pronouncement on the issue, found in *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), must be dispositive of this appeal:

> Assuming that probable cause previously existed, we know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment. Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of arrest (citation omitted). The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action. 417 U.S. at 595–596, 94 S.Ct. at 2472. *Accord: United States v. Mitchell,* 538 F.2d 1230 (5th Cir. 1976).

 Where law enforcement officers have squandered an overt opportunity to obtain a warrant antecedent to an otherwise acceptable search (justified by exigent circumstances or incident to a valid arrest), there must be a showing of compelling "countervailing factors" to sustain the constitutionality of the suspect intrusion. *Niro v. United States, supra* at 539. We are persuaded that this view is not foreclosed by the Supreme Court's holding in *Cardwell v. Lewis, supra.* We believe that, if a de-

---

**5.** We must assume that the officers harbored the expectation that, if the black Mercury Cougar belonged to Chuke, he would ultimately use it to depart from the vicinity of the motel.

**6.** In these cases we found that arrests (with and without arrest warrants, respective-

ly) served as subterfuge for making warrantless, exploratory searches of the defendants' apartments for evidence which could be used to convict them of the crimes charged. In both instances the officers had ample opportunity to obtain search warrants prior to making the arrests.

fendant's allegation of deliberate bypass of a warrant is supported by a finding that a realistic opportunity existed to procure one, as in this case, the Government must come forward with *objective* evidence tending to justify this deviation from normal police procedure. Subjective good faith on the part of the authorities cannot suffice as a complete defense if we are to honor the principle that warrantless searches are per se unreasonable under the Fourth Amendment. *Coolidge v. New Hampshire,* 403 U.S. 443, 454–455, 91 S.Ct. 2122, 29 L.Ed.2d 564 (1971); *United States v. Lewis,* 504 F.2d 92, 100 (6th Cir. 1974). We must satisfy ourselves from the facts that the officers conducted themselves reasonably under all of the circumstances and did not gratuitously usurp the role of the impartial magistrate.

 Our examination of the record in this case convinces us that the Government has succeeded in sustaining its burden of proving that the search of Chuke's car was reasonable. The officers involved seasonably recognized the need for a warrant and promptly sought an official legal opinion concerning the feasibility of procuring one. It appears that their decision to abandon this effort was dictated by the erroneous advice which they received from counsel. Although we are unwilling to commit to a rule that would excuse neglect ascribable to presumptively competent legal advice, it is a relevant factor which must be considered. *United States v. Johnson,* 20 Crim.L.Rep. 2367, 2368 (D.C.Cir. en banc, Jan. 12, 1977).

We also find it significant that the officers did not stop Chuke's car solely on the basis of the informer's tip. They moved in only after Agent Wiley saw Chuke place an object which appeared to be a gun under the driver's seat. This observation, coupled with Wiley's existing knowledge that Chuke was a previously convicted felon, gave rise to immediate probable cause to arrest Chuke for possessing a weapon and to search the vicinity under his immediate control for guns. *United States v. Bush,* 500 F.2d 19 (6th Cir. 1974). It simultaneously created exigent circumstances beyond those immediately attributable to the moving vehicle situs of the arrest. Agent Wiley reasonably believed that Chuke had just committed a crime in his presence and that the instrumentality of that crime was secreted in the car. We also credit his testimony that the remoteness of the officers' vantage point some fifty to seventy-five yards from the car, and the car's proximity to the motel combined to make it difficult to safely apprehend Chuke before he began to drive away.

We hold that these factors defeat Chuke's assertion that the officers contrived the exigency to evade the warrant requirement. *United States v. Mitchell, supra* at 1233.

The judgment of the District Court is affirmed.