UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph Michael GARDNER,
Defendant-Appellant.

No. 76–2291.

United States Court of Appeals,
Fifth Circuit.

June 10, 1977.

Peter F. K. Baraban, North Miami, Fla., George D. Gold, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., C. Wesley G. Currier, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before WISDOM, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

In this proceeding the defendant appeals his two count conviction for possession of both cocaine and marijuana with intent to distribute. 21 U.S.C.A. § 841(a)(1). His sole contention: the trial court erred in denying his motion to suppress evidence seized after a warrantless entry into his home. Finding the intrusion lawful under the exigent circumstances exception to the warrant requirement, and that defendant failed to prove sufficiently a violation of the knock and announce requirements of § 3109 to obtain suppression of the evidence, we affirm.

In May 1975, Drug Enforcement Administration (DEA) officials arrested Ronald Gunn in Georgia after Gunn sold them cocaine. Gunn named defendant's wife, Susan Gardner, as his source. In hope of lenient treatment, Gunn agreed to cooperate with DEA by working as an informer.

After a monitored phone call to the Gardner household, Gunn flew to the Fort Lauderdale airport and met defendant in a local bar. The two men then traveled to defendant's home. DEA agents, who had been following Gunn, tailed the pair as they left the bar, but lost them in traffic. Other agents, however, had staked out defendant's home because they thought a kilogram of cocaine might be hidden there. As a result, they were on the scene when defendant and the informer arrived. After 15–20 minutes, the two emerged from the home. The informer pulled out his shirttail and wiped his glasses, a prearranged signal that cocaine was in the house. Federal agents, in at least five cars, promptly moved in with their guns drawn and arrested both defendant and Gunn.

Gunn told the agents a female was in the house. The agents took the defendant's car keys, knocked on the door, unlocked it, and entered. Inside they found the defendant's wife. The evidence concerning the conduct of the officers upon gaining access to the house conflicts. Both parties agree, however, that the defendant, upon being told a warrant could be obtained to allow a thorough search, correctly informed the agents that cocaine could be found in a kitchen cabinet.

The defendant claims the entry violated his Fourth Amendment rights so that the fruits should be excluded from evidence. He argues that the Government has not met its burden of showing probable cause and "exigent circumstances" to justify the entry into his house without a warrant. *See Coolidge v. New Hampshire,* 403 U.S. 443, 455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Walker v. United States,* 225 F.2d 447 (5th Cir. 1955). The argument has two prongs: first, there was no proof of an

inadequate opportunity to obtain a search warrant; and second, there was insufficient proof of imminent destruction of contraband.

■■■■ Defendants argue that probable cause for a search warrant existed so far in advance of the search that the agents' failure to obtain a warrant was inexcusable. *McDonald v. United States*, 335 U.S. 451, 454–455, 69 S.Ct. 191, 93 L.Ed. 153 (1948). Certainly the DEA knew in advance that the Gardners were involved in the drug trade. In the language of the trial judge, however, the agents only "anticipated" that a supply of drugs would be in the house. The defendant testified no cocaine was in the house when he received the monitored phone call the defendant now says should have established probable cause. The DEA attempted to tail Gunn and the defendant from the airport, presumably because they were uncertain where the illicit transaction would take place. At least some of the Gardners' cocaine was thought to be stored in a "yellow Jaguar." Because of those uncertainties, as well as the danger that a premature raid would "tip the hand" of the agents and the need to enforce high standards of probable cause to protect the homes of citizens from unreasonable intrusions, the DEA was justified in not seeking a warrant before Gunn arrived in town. In any event, the reasonableness of a search under exigent circumstances is not foreclosed by the failure to obtain a warrant at the earliest practicable moment. *Cardwell v. Lewis*, 417 U.S. 583, 595–596, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *United States v. Mitchell*, 538 F.2d 1230, 1233 (5th Cir. 1976) (en banc).

■■■■ Defendant contends there was insufficient proof of imminent destruction of contraband to satisfy the exigent circumstances exception to the warrant requirement. The district court's finding of adequate justification for entry is not clearly erroneous. Gunn's signal provided ample probable cause for arrest. When Gunn told the agents someone was in the house, an immediate entry became necessary to prevent disposal of the cocaine, a powder which can easily be flushed down a toilet. The agents could logically have suspected that anyone inside the house would be well aware of the five police cars ringing the premises and the arrest of defendant and Gunn. The danger that someone would dispose of the illicit drugs was especially great in this case because the agents knew the person in the house might be Susan Gardner, the defendant's wife and partner in the drug trade. Accordingly, the agents justifiably acted " 'now or never' to preserve the evidence of the crime." *Roaden v. Kentucky*, 413 U.S. 496, 505, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757 (1973).

Defendant argues that only if the agents knew that *his wife* was in the house could they rely on the imminent danger of contraband destruction as an exigent circumstance to justify a warrantless entry. Such sure knowledge that the person in the house was Susan Gardner was not a necessary prerequisite to entry. The agents could rely on the reasonable forecast that anyone in the house at the time defendant and Gunn were there might know cocaine was present and, seeing the major arrest activity in front of the house immediately upon their departure, might be expected to try to dispose of it.

The defendant's reliance on *Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970), to foreclose a finding of exigent circumstances is misplaced. In *Vale*, the Court held that police ignorance as to whether anyone was inside a house known to contain drugs deprived the situation of the emergency character necessary to justify a warrantless search. In this case, however, the officers did know someone was on the premises, and they could logically have concluded disposal of the contraband was imminent. As a result, the facts of *Vale* are distinguishable, and its holding does not control this decision.

■■■■ The defendant further contends that once the agents entered and secured the premises, thereby assuring that any con-

cealed evidence would not be destroyed, they were required to seek a search warrant for the premises before they could go back through the house and search for contraband. *United States v. Erwin*, 507 F.2d 937, 938 (5th Cir. 1975); *see also United States v. Looney*, 481 F.2d 31 (5th Cir.), *cert. denied*, 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 476 (1973). Upon the threat that a search warrant could be obtained, however, the defendant told the agents where to find the cocaine, indicating that he wanted to avoid a search. Defendant asserts that he was coerced, so the subsequent search was invalid. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Although the evidence was conflicting, an agent testified he read Miranda warnings to defendant and the court so found. The threat to obtain a warrant which would facilitate a thorough and perhaps disruptive search of the premises was merely a threat by the officers to exercise rights granted them by the law. The record does not show the threat was misleading or made groundlessly in bad faith. *See Bivens v. Six Unknown Named Agents*, 456 F.2d 1339 (2d Cir. 1972). The defendant conceded he could not recall a "direct threat to my bodily person." The trial judge concluded the defendant was not under duress, and his finding is not clearly erroneous. The record does not show either a Fourth or Fifth Amendment violation.

█ The defendant also seeks to exclude the same evidence by asserting that the federal agents, by failing to announce their "authority and purpose" before they unlocked the door of defendant's home, violated 18 U.S.C.A. § 3109. That statute provides: "[t]he officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance . . . ." The statute applies whether or not the officers acted pursuant to a warrant. *Sabbath v. United States*, 391 U.S. 585, 588, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968).

We need not decide the effect of a violation on defendant's case. The defendant's being outside with the officers rather than in the building at the time of entry is not relevant to this decision. The record does not show a § 3109 violation. DEA Agent James C. Brown, the arresting officer, when asked what the agent who had unlocked the door had said, replied "I don't know that he said anything at all." Neither Agent Brown, nor the defendant, nor the defendant's neighbor, all of whom were present at the scene, testified that the agent failed to give the required announcement. Positive testimony showed that he knocked.

█ In asserting a § 3109 claim, the burden of establishing a prima facie case rests on the defendant. *United States v. Murrie*, 534 F.2d 695, 698 (6th Cir. 1976). Because of the presumption of Government propriety, the defendant should at least put into evidence some testimony which establishes the factual basis for a claim that § 3109 has been violated. *See Rogers v. United States*, 330 F.2d 535 (5th Cir.), *cert. denied*, 379 U.S. 916, 85 S.Ct. 265, 13 L.Ed.2d 186 (1964). The burden is not great, and parallels the necessity that a defendant assert a search was conducted without a warrant before the Government is forced to prove the search was reasonable within the confines of the Fourth Amendment. In this case, the defendant has failed to meet that burden, and his claim to relief under § 3109 must fail.

AFFIRMED.