case is REMANDED for further proceedings consistent with this opinion.

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ronald THOMPSON,**
**Defendant-Appellant.**

No. 82–3320.

United States Court of Appeals,
Fifth Circuit.

March 4, 1983.

William Noland, New Orleans, La., for defendant-appellant.

John P. Volz, U.S. Atty., Howat A. Peters, Asst. U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before RANDALL and HIGGINBOTHAM, Circuit Judges, and McDONALD *, District Judge.

* District Judge of the Southern District of Texas,     sitting by designation.

RANDALL, Circuit Judge:

The defendant, Ronald Thompson, appeals his conviction on two grounds: (1) that the district court should have granted his motions to suppress evidence obtained in a warrantless search of his residence; and (2) that the evidence was insufficient to support his conviction of possession with intent to distribute cocaine. For the reasons set forth below, the defendant's conviction and sentence are vacated and the case remanded for further findings.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

This case began when one Norma Figueredo was arrested for various cocaine-related offenses in July of 1981. Presumably in the hope of currying favor with the authorities, Figueredo agreed to become a confidential informant. Over the course of several telephone conversations, and with the assistance of Special Agent Woodfork, she made arrangements with Thompson and codefendant Jesus Hernandez to purchase some cocaine. On September 22, 1981, Figueredo met with Hernandez and Thompson at Thompson's residence in New Orleans, Louisiana. Hernandez provided approximately two ounces of cocaine which was apparently weighed by Thompson. When Figueredo stated that she needed more cocaine, Thompson suggested cutting the substance with some inositol, which he had in his house. Figueredo made arrangements to pick up and pay for the cocaine at Thompson's residence the following day.

On September 23, 1981, Figueredo again went to Thompson's home, this time accompanied by Special Agent Woodfork. Other agents had the Thompson residence under surveillance. Upon arrival at the residence, Figueredo entered the house to consummate the deal while Woodfork waited in the car parked in front. When Thompson appeared at the door, however, Woodfork realized that he and Thompson knew each other and that Thompson might recognize him. The record is unclear as to whether Woodfork was aware of his possible past association with the defendant before Thompson appeared at the door.

After Woodfork saw Thompson, he drove away and met with the surveillance agents to apprise them of the situation. He then approached the residence and attempted to go in, but was stopped by two growling Doberman pinschers. Woodfork again conferred with the other agents and returned to his car. Thompson then approached the vehicle and informed Woodfork that the cocaine was in the house. At this point, Woodfork turned his head towards Thompson, who apparently recognized the agent. Thompson was placed under arrest.

Woodfork next advised the surveillance agents that the confidential informant was still in the house with at least one other suspect. The agents then entered the house. They discovered a substantial quantity of cocaine and marijuana on a weighing scale in the same room where they found Figueredo and Hernandez; the drugs and the scale were seized and introduced into evidence at trial.

The defendant, along with Hernandez, was charged in a two-count indictment on October 2, 1981, with conspiracy to possess with intent to distribute and to distribute cocaine hydrochloride and with distribution of the same in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846 and 18 U.S.C. § 2. A superseding indictment returned in April, 1981, charged the same offenses except that count two was changed to possession with intent to distribute.

A hearing on the defendant's motion to suppress the evidence was held before a magistrate on November 9, 1981; the magistrate recommended that the motion be denied. The magistrate's report and recommendation were adopted by the district court. The defendant reurged his motion to suppress immediately before trial, and the motion was again denied. After the government presented evidence, the motion was urged for a third time and for a third time it was denied.

A jury convicted Thompson on both counts. He was sentenced to serve five years on the first count and five years on

the second, to run concurrently, and he received a three-year special parole term on count two. This appeal followed.

## II. THE MOTION TO SUPPRESS.

The parties stipulated that the drug enforcement agents did not have search or arrest warrants with them at the time they entered Thompson's home. The government maintains that the entry into the home was justified by exigent circumstances, and that once the agents were lawfully on the premises, the evidence was in plain view and therefore subject to immediate seizure. The defendant questions whether there were exigent circumstances justifying the entry, and maintains further that any exigency was deliberately created by the agents, and therefore could not be used to justify the search.

### A. Exigent Circumstances.

We must begin our analysis with the understanding that searches conducted without a warrant "are *per se* unreasonable under the fourth amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnotes omitted) (emphasis in original). These exceptions are "jealously and carefully drawn, and there must be a 'showing by those who seek exemption ... that the exigencies of the situation made [the search] imperative.' " *Coolidge v. New Hampshire,* 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971) (quoting *Jones v. United States,* 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958), and *McDonald v. United States,* 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948)). The burden is on the government to show that the search falls within one of the exceptional situations. *Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1969). In this case, the government claims that the agents entered Thompson's home because they believed that the confidential informant was in danger and in order to prevent the imminent destruction of the evidence.

The problem in this case is that there is a conflict in the evidence about what actually happened that was never adequately resolved by the district court. In denying the third and final motion to suppress, the district court seemed to base its ruling on its finding that the agents entered in order to arrest Hernandez rather than on exigent circumstances:

I think, basically, you're talking about the Plain-View Doctrine. If a police officer is in a place where he has a right to be and he sees in his plain view contraband, then he has a right to seize it. He certainly does not have to go out and get a search warrant under those circumstances, so the issue involved is do they have a right to be inside of the home at the time that the cocaine that was sitting on the scale was seized, and the Court reaches the conclusion that the officers did. They had already made an arrest outside of the home. They had probable cause to believe that a felony was being committed inside of the home, so they had a right to enter the home for the purpose of making an arrest, and in making the arrest, when they get inside and found the contraband in plain view, then the Plain-View Doctrine comes into effect.

I don't think there should be a great deal of emphasis on the notion of exigent circumstances here. I think it's more of the operation of the execution of a lawful arrest and a seizure of contraband that's in plain view that's involved in the case.

Record, Vol. IV, at 258–59. Similarly, just before trial, the court noted that the agents had "probable cause to arrest the other suspects within the home, and under those circumstances the officers and agents had a right to be where they were ... even pretermitting the issue of exigent circumstances ...." Record, Vol. III, at 48. The magistrate who presided over the motion-to-suppress hearing found that the "[agents] entered the residence after the arrest of defendant Thompson outside in order to arrest the other suspect and to protect the confidential informant who had

assisted the agents in developing the case." Record, Vol. I, at 94. The magistrate then discussed what circumstances might be considered exigent, but made no specific finding as to whether exigent circumstances existed in this case or what those circumstances were.

To the extent that the court's statements indicate that the denials of the motions were based on the agents' right to enter Thompson's home to arrest Hernandez, the district court's decision is in conflict with *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), and *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). *See also United States v. Congote,* 656 F.2d 971 (5th Cir. 1981) (court stated that persons' fourth amendment rights may have been violated when agents made warrantless entry into apartment where cocaine distribution had occurred, but court went on to hold that particular defendant had no standing to raise the issue). In *Steagald,* the Supreme Court held that absent exigent circumstances, law enforcement officers could not enter a third person's home without a search warrant to arrest a suspected felon, even where they had a valid warrant for his arrest. In *Payton,* the Court held that the police could not make a warrantless routine felony arrest in a suspect's own home in the absence of exigent circumstances.[1] Since the agents in this case were not justified in entering Thompson's home in order to arrest his confederate without a warrant or exigent circumstances, we are left with a need for further findings as to whether exigent circumstances provided a justification for the agents' entry.

The government has emphasized its claim, both in the proceedings below and on appeal, that the entry was justified because

the agents believed that the confidential informant's life was in danger. If the government is to justify its entry on the basis of this exception, the record must disclose that the agents had a reasonable basis for assuming that the occupant of the home was armed and that lives were in danger. *See Sabbath v. United States,* 391 U.S. 585, 591, 88 S.Ct. 1755, 1759, 20 L.Ed.2d 828 (1968) (no exigent circumstances where officers had no basis for assuming petitioner was armed or that informant was in any danger). In the case relied on by the government and by the district court, *United States v. Baker,* 577 F.2d 1147 (4th Cir.), *cert. denied,* 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 153 (1978), the defendant's neighbors had seen him with a weapon at the house the day before. Similarly, in *United States v. Chuke,* 554 F.2d 260 (6th Cir.1977), the Sixth Circuit noted that the agent had seen the defendant place an object that looked like a gun on the driver's seat of the car. *See generally,* 2 W. LaFave, *Search and Seizure* § 6.5(d) (1978 & Supp.1982). Courts have refused to find that lives were in danger, and that a warrant was therefore unnecessary, "based on the 'mere presence of drugs' on the premises." *United States v. Kane,* 637 F.2d 974, 980 (3rd Cir. 1981) (quoting *United States v. Doering,* 384 F.Supp. 1307, 1310–11 (W.D.Mich.1974)). The record in this case, like the record in *Sabbath,* does not contain any basis for the agents' fears that Hernandez was armed, or that he might have posed a danger to the informant.

The government attorneys have also argued that the agents entered the residence to prevent the possible destruction of evidence. To prevail on this exception, the government must demonstrate that the agents had reason to believe that the evi-

---

1. We note, as did the district court, that a felony may have been in progress in Thompson's home, which was not the case in either *Steagald* or *Payton,* but may have been the case in *Congote.* The far-reaching discussion by the majority of the right to privacy in one's home in *Payton,* 445 U.S. at 586–98, 100 S.Ct. at 1380–86, suggests, however, that the mere suspicion that a felony is in progress would not in and of itself permit entry, unless the court

were prepared to hold that the occurring felony is itself an exigent circumstance. While in this case, more than mere suspicion existed that a felony was in progress, that felony was engineered by the government under circumstances allowing enough time to obtain a warrant. This being so, the felony itself cannot serve to justify the nonconsensual entry into Thompson's home.

dence was in danger of imminent destruction. *See United States v. Congote,* 656 F.2d 971, 974 n. 3 (5th Cir.1981); *United States v. Dohm,* 597 F.2d 535, 538 (5th Cir.), *cert. denied,* 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 196 (1979); *United States v. Gardner,* 553 F.2d 946, 948 (5th Cir.1977), *cert. denied,* 434 U.S. 1011, 98 S.Ct. 722, 54 L.Ed.2d 753 (1978). In both *Gardner* and *Dohm,* we noted that the agents knew that someone had remained on the premises who could easily have flushed the cocaine down the toilet. In contrast, the Supreme Court held in *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970), that there were no exigent circumstances where the defendant had been arrested outside of his home and there was no indication that there was anyone else in the house who could destroy the evidence.

The Third Circuit has enumerated some of the factors that may be relevant to the court in its evaluation of the exigency of the situation:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to the police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge "that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic."

*United States v. Rubin,* 474 F.2d 262, 268 (3rd Cir.), *cert. denied,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973) (citations omitted). In *Rubin,* the court found that there were emergency circumstances when one of the suspects, upon his arrest a few blocks from his home, yelled "Call my brother," from which the police could reasonably have assumed that the arrestee had given a signal to persons in the vicinity of "imminent police intervention" and of the need to dispose of the contraband quickly. Further, an agent had been sent to obtain a warrant, but the suspect's arrest necessitated prompt action. *See also United States v. Turner,* 650 F.2d 526 (4th Cir.1981) (while one agent was trying to get a warrant, the other agents were forced to arrest Turner as he left his apartment; agents feared that Turner's confederate, who remained in the apartment, had seen the arrest and would be alerted to the need to destroy the evidence); *United States v. Fulton,* 549 F.2d 1325 (9th Cir.1977) (agents believed second person, who could dispose of the contraband, was still in apartment); *United States v. Delguyd,* 542 F.2d 346 (6th Cir. 1976) (agents saw person watching from window as they arrested his confederate, heard papers rustling and a toilet flushing as they neared the apartment, and made only limited search before obtaining warrant).

As in the aforementioned cases, the government might have been able to demonstrate that the agents believed that the evidence in this case was in imminent danger of destruction. The agents apparently knew that Thompson's confederate was in the building. They had reason to believe that there was cocaine in the home, a white powder easily flushed down the toilet. They could reasonably have assumed that even if Hernandez had not observed Thompson's arrest out front, he would figure out that something was wrong when Thompson, who had gone outside to bring the other buyer into the house, did not return in a few minutes.

What is missing in this record is any actual indication that the agents entered Thompson's home because they believed that they were faced with a "now or never" situation, *Roaden v. Kentucky,* 413 U.S. 496, 505, 93 S.Ct. 2796, 2801, 37 L.Ed.2d 757 (1973), where they would have to seize the goods immediately or risk their disappearance. The agents' testimony was concerned with the informant's safety and not with the risk of losing the contraband.[2] Wood-

---

2. The defendant has emphasized that the agents who entered the building never actually said why they entered. The only agent to say

fork stated on cross-examination at the suppression hearing that the agents entered "possibly to seize the narcotics that we had come to buy," Record, Vol. II, at 18, but there is no indication that the seizure was motivated by the fear of imminent destruction.

■ The existence of exigent circumstances and the agents' reasons for entering the premises are questions not easily ascertainable from the cold record on appeal. Because the district court did not make a finding as to whether there were exigent circumstances—danger to the informant or the possibility of imminent destruction of the contraband—we remand this case for further findings and, if necessary, the taking of further testimony. If the district court determines that there were exigent circumstances that would normally have justified the agents' warrantless entry into Thompson's residence, then the court should go on to consider whether the exigency was created by the government.

### B. The Creation of Exigent Circumstances.

Thompson contends that even if there were exigent circumstances in this case, those circumstances cannot justify the warrantless search of his home because they were deliberately created by the government. He maintains that if the agents had probable cause to arrest him on September 23, 1981, they also had probable cause on the evening before, and therefore they could have obtained arrest and search warrants which would have avoided the need for this entire inquiry. He maintains further that Woodfork knew in advance that there was a good possibility that Thompson would recognize him, thereby creating the precise exigent circumstances that occurred.

The government explained at oral argument that the agents did not obtain a warrant because they expected to gain lawful

entry into the home through Woodfork's pretending to be the cocaine purchaser. The government added, in response to further questions from this court about why the agents did not obtain a warrant as a precautionary measure, that the agents had not planned to seize anything at Thompson's home, but had hoped instead to continue the investigation at another site. The government also disputed Thompson's claim that Woodfork was aware of the possibility of recognition before Thompson appeared at the front door.

The first question to be determined is whether the agents could have obtained a search warrant in advance of the planned drug deal. We agree with the defendant that warrants could have been obtained as of the evening of September 22. In order to obtain a search warrant, law enforcement officers must inform the magistrate "of some of the underlying circumstances from which the informant concluded that the narcotics were where [she] claimed they were, and some of the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable.'" *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964); *see Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In this case, the agents had information from an informant who had seen the cocaine in the defendant's home and her story was corroborated by a taped conversation in which she and the defendant planned the drug deal.

On September 21, 1981, Figueredo taped a conversation with Thompson in which they finalized arrangements for the deal to be made at Thompson's house. While Thompson was clever enough never to mention the word "cocaine" over the telephone, the references to quantity, price and sources would have corroborated Figueredo's statements concerning the real nature of the conversation. On September 22,

he was worried about Figueredo's safety was Woodfork, and he remained outside. Pumphrey did testify, however, that before he entered the residence, he watched the informant enter the home, spoke with Woodfork, and

then observed Woodfork signal the other agents after Thompson's arrest. The trial judge could conceivably have drawn an inference concerning the agents' motives from their actions.

1981, Figueredo met Hernandez and Thompson at Thompson's residence, where Hernandez produced two ounces of cocaine to be weighed and tested. Arrangements were made to pick up and pay for the cocaine the following day. We conclude that the information available to the agents through the informant on the evening before the arrest would have provided probable cause sufficient to obtain both an arrest warrant and a warrant to search Thompson's home.

■ The agents' failure to avail themselves of the opportunity to obtain a warrant does not, however, end our inquiry, for the failure to obtain a warrant at the first opportunity is not a fatal defect. In *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), the Supreme Court stated: "The exigency [necessitating seizure of an automobile] may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action." *Id.* at 596, 94 S.Ct. at 2472. Similarly, while strongly condemning the agents' failure to obtain a warrant in *United States v. Mitchell,* 538 F.2d 1230 (5th Cir.1976) (en banc), *cert. denied,* 430 U.S. 945, 97 S.Ct. 1578, 51 L.Ed.2d 792 (1977), we upheld the agents' search of an automobile when exigent circumstances did in fact arise. 538 F.2d at 1233. *See also United States v. Gardner, supra,* 553 F.2d at 948 ("reasonableness of a search under exigent circumstances is not foreclosed by the failure to obtain a warrant at the earliest practicable moment"). On the other hand, "the opportunity to obtain a warrant is one of the factors to be weighed in determining reasonableness." *Vale v. Louisiana,* 399 U.S. 30, 40, 90 S.Ct. 1969, 1975, 26 L.Ed.2d 409 (1970) (Black, J., dissenting); *see also, United States v. Chuke, supra,* 554 F.2d at 263; *United States v. Rubin, supra,* 474 F.2d at 268.[3]

■ Of perhaps more concern is the suggestion that the exigent circumstances in this case were deliberately created by the government. The agents cannot justify their search on the basis of exigent circumstances of their own making. *United States v. Scheffer,* 463 F.2d 567 (5th Cir.), *cert. denied,* 409 U.S. 984, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972); *see also United States v. Hare,* 589 F.2d 1291, 1294 (6th Cir.1979); *United States v. Rosselli,* 506 F.2d 627, 630 (7th Cir.1974); *United States v. Curran,* 498 F.2d 30, 34 (9th Cir.1974); *Niro v. United States,* 388 F.2d 535, 539 (1st Cir.1968).[4] In *Scheffer,* we rejected the government's contention that exigent circumstances justified the warrantless search of the defendant's home where there was no "plausible explanation" for the failure to obtain a warrant. We characterized the government's statement that "the circumstances surrounding the raid on the Scheffer house were such that there was not enough time to secure a search warrant," as incredible "in view of the fact that customs agents, acting

---

3. In fact, a number of circuits have gone so far as to state:

   Where law enforcement officers have squandered an overt opportunity to obtain a warrant antecedent to an otherwise acceptable search (justified by exigent circumstances incident to a valid arrest), there must be a showing of compelling "countervailing factors" to sustain the constitutionality of the suspect intrusion.... [I]f a defendant's allegation of deliberate bypass of a warrant is supported by a finding that a realistic opportunity existed to procure one, as in this case, the Government must come forward with *objective* evidence tending to justify this deviation from normal police procedure.

   *Chuke,* 554 F.2d at 263–64 (emphasis in original) (quoting *Niro v. United States,* 388 F.2d 535, 539 (1st Cir.1968)).

4. The en banc court's focus in *Mitchell, supra,* on whether exigent circumstances did in fact arise, 538 F.2d at 1233, and its statement that unforeseeability is not an element of the exigent circumstance exception, 538 F.2d at 1233, n. 3, is not inconsistent with the refusal to recognize exigent circumstances deliberately created by the government as a justification for a warrantless entry into a person's home. First, the exigency in *Mitchell,* while not *unexpected,* had not been *created* by the government. Second, both *Mitchell* and *Cardwell, supra,* specifically involved searches of automobiles, where expectations of privacy are significantly lowered. *See Cardwell, supra.*

through the cooperating smugglers, actually planned the cocaine transfer and could have controlled the time at which it took place." 463 F.2d at 575. We held further that "[s]light delay or the inconvenience of presenting facts to a magistrate are not sufficient circumstances to by-pass the warrant requirement." *Id.* (citing *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948)).

In determining whether the exigent circumstances in this case were created by the government, the district court should make a specific finding as to whether Agent Woodfork was aware of the possibility that Thompson would recognize him before Thompson appeared at the door. Woodfork testified both at the suppression hearing and at trial that he knew only that Figueredo was planning to purchase the cocaine from a man named Ronald. Woodfork maintained that he had no idea that he might know this individual until Thompson appeared. Record, Vol. II, at 7; Vol. IV, at 232–33. Figueredo testified, however, that she and Woodfork discussed the possibility that Woodfork and Thompson were acquainted on the way over to the house. Record, Vol. IV, at 181, 210–11. We note further that Woodfork corrected Figueredo's impression that she may have suggested targeting Thompson. He explained that individuals were targeted by the drug enforcement agents, not by the informants. Record, Vol. IV, at 236. If this was the case, Woodfork presumably had access to records which included Ronald's surname and which would have alerted him to the probability of recognition. In any event, we leave this assessment of credibility to the district court.[5]

If Woodfork knew in advance that Thompson might recognize him, then the government's entire justification is called into question. The government's claim that there was no need to obtain a warrant because the agent had a means of lawful entry is undercut by the agent's knowledge of the high probability that lawful entry would be impossible. The alleged danger to the informant would have resulted from Woodfork's sending her into Thompson's home when he knew that such an action could put her in the danger from which he claims to have been protecting her. Similarly, the possible imminent destruction of the cocaine would have been created by an arrest that Woodfork should have known would be necessary. This scenario would suggest that the government created the exigent circumstances on which it now relies in attempting to justify the search. If the government in fact created the exigent circumstances, then those circumstances cannot justify the entry into Thompson's home.

### C. Plain View.

■ If the district court concludes that the agents' entry into Thompson's home was justified by exigent circumstances not of their own making, then the evidence was in the plain view of officers lawfully on the premises and consequently was subject to immediate seizure.[6] In this case, the motion to suppress would properly be denied. *See Harris v. United States,* 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968); *Ker v. California,* 374 U.S. 23, 41–43, 83 S.Ct. 1623, 1634–1635, 10 L.Ed.2d 726 (1963); *United States v. Delgado,* 615 F.2d 294, 296–97 (5th Cir.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980); *United States v. Looney,* 481 F.2d 31, 34 (5th Cir.), *cert. denied,* 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 476 (1973). The fact that the agents expected to find contraband, which is easily destroyed, on the premises does not preclude operation of the plain view exception to the warrant re-

---

5. There is also some suggestion in the record that Woodfork sent Figueredo back into the house *after* he saw Thompson, i.e., after he could have guessed that Thompson's recognition of him could have put her in danger. Record, Vol. III, at 41.

6. The defendant attempted to suggest at trial that the items seized may not have been in the same room with Figueredo and Hernandez. The district court found that the items were in the agents' plain view when they arrested Hernandez and that finding is not clearly erroneous.

quirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 472 & n. 28, 91 S.Ct. 2022, 2041 & n. 28, 29 L.Ed.2d 564 (1971); *United States v. Gorman,* 637 F.2d 352, 354 (5th Cir.1981); *United States v. Worthington,* 544 F.2d 1275, 1280 n. 4 (5th Cir.), *cert. denied,* 434 U.S. 817, 98 S.Ct. 55, 54 L.Ed.2d 72 (1977); *United States v. Cushnie,* 488 F.2d 81 (5th Cir.1973), *cert. denied,* 419 U.S. 968, 95 S.Ct. 233, 42 L.Ed.2d 184 (1974).

## III. SUFFICIENCY OF THE EVIDENCE OF POSSESSION.

The defendant contends that the evidence produced at trial was insufficient to convict him of possession with intent to distribute cocaine. We reach this question, despite our holding that the case must be remanded, in order to facilitate final disposition of the case should the district court find that there were exigent circumstances. In our review of a criminal defendant's jury conviction, we must consider the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and we must affirm if we conclude that a reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *cert. granted on other grounds,* —— U.S. ——, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982).

■ The defendant maintains that there was no evidence that he ever possessed the cocaine. In order to convict a defendant of possession of a controlled substance in violation of 21 U.S.C. § 841(a)(1), the government must prove either actual or constructive possession. *United States v. Moreno,* 649 F.2d 309, 312 (5th Cir.1981); *United States v. Martinez,* 588 F.2d 495, 498 (5th Cir.1979). Possession may be proved by circumstantial as well as direct evidence, *United States v. Vergara,* 687 F.2d 57, 61 (5th Cir.1982), and constructive possession may be proved by "ownership, dominion or

control over the contraband itself, *or dominion over the premises* or the vehicle in which the contraband was concealed." *United States v. Salinas-Salinas,* 555 F.2d 470, 473 (5th Cir.1977) (emphasis added).

■ There is ample evidence in the record in this case of constructive possession to support the defendant's conviction. The cocaine was found in the defendant's home on a scale that also belonged to the defendant. Hernandez testified that Thompson supplied Figueredo with inositol, a substance used to increase the yield of the contraband. We note further that there is overwhelming evidence that Thompson facilitated the transaction, including the taped conversation in which he promised to arrange the deal, and the fact that he arranged the meeting between the supplier, Hernandez, and the buyer, Figueredo.

## IV. CONCLUSION.

In summary, we affirm the district court's determination that the evidence seized was in plain view once the agents entered Thompson's home. We vacate the convictions and sentences, however, and remand the case to the district court for findings of fact and conclusions of law on the remaining issues in the case: (1) whether there were exigent circumstances which would normally have justified the agents' warrantless entry into Thompson's home, and (2) whether those exigent circumstances cannot justify the entry in this case because they were deliberately created by the government. The district court may take additional evidence, if necessary.

If the district court finds that the agents' entry into Thompson's home was unlawful, then it must suppress the evidence. If it finds that the seizure of the evidence was lawful, then the original sentences and convictions must be reinstated.[7]

---

7. If Thompson challenges the trial court's findings on remand, he need not file a new appeal. He may instead lodge with this court certified copies of the trial court's findings and, if needed, supplementary briefs or other materials.

The matter will be referred to this panel. *See United States v. Cole,* 617 F.2d 151, 153 n. 1 (5th Cir.), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1980).

The judgment of the district court is vacated and the cause remanded to allow further proceedings consistent with this opinion.

VACATED and REMANDED.