**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
December 1, 2009

Charles R. Fulbruge III
Clerk

No. 08-11068

UNITED STATES OF AMERICA

Plaintiff – Appellee

v.

NELSON D. TIMOTEO

Defendant – Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:08-CR-74-1

Before REAVLEY, CLEMENT, and SOUTHWICK, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

Nelson Timoteo was indicted for conspiracy to possess with intent to distribute more than five kilograms of cocaine and found guilty after a jury trial. He appeals the district court's pre-trial denial of his motion to suppress evidence seized during a warrantless search of his hotel room. We affirm.

**FACTS AND PROCEEDINGS**

On May 1, 2008, after several months of investigation, agents of the United States Drug Enforcement Agency (DEA) and local law enforcement

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

officers staked out the Dallas/Forth Worth airport for Nelson Duarte and Brian Brum, Canadian citizens who were scheduled to arrive that day. Agents had learned that Duarte and Brum planned to purchase more than $1 million worth of cocaine while in the Dallas area. They observed the pair leave the airport in a silver Hyundai, driven by another person who was later identified as Timoteo. Agents followed the vehicle to the Candlewood Suites Hotel where Duarte and Brum checked into a room.

Some agents remained at the Candlewood Suites and others followed the vehicle, which Timoteo drove to the Country Inn Suites Hotel. The agents' investigation revealed that a person named John Miliaris had rented the Hyundai and had registered as a guest at the Country Inn Suites. The agents began conducting surveillance there.

Duarte and Brum were arrested at another location at about 1:30 p.m. after they attempted to purchase cocaine from an undercover agent. The pair immediately began cooperating with agents. They said that a man named "Jack" had picked them up from the airport and had given them half of the money for the cocaine purchase. They planned to complete the drug transaction by 8 p.m., because a truck driver who was going to transport the cocaine had to leave by that time.

Agents decided to arrest Timoteo and secure his hotel room until a search warrant could be obtained. Agents placed a call to Timoteo's room, advising the man who picked up the phone that his Hyundai had been struck by another car. Miliaris, whom the agents had never seen, came out to the parking lot and was arrested. The agents realized that Miliaris was not the person who picked up Duarte and Brum at the airport. When agents questioned Miliaris, he stated that Timoteo was inside the hotel room.

Concerned that Timoteo or other possible coconspirators could have observed the arrest, agents decided to enter the hotel room for the agents' safety

2

and to prevent the destruction of evidence. Agents acknowledged at the suppression hearing that they had no evidence that anyone involved in the drug conspiracy had firearms though, in their experience, firearms were normally involved in large drug transactions.

The agents took Miliaris's room key and knocked on the door of the hotel room. Hearing no response, the agents entered the room and found Timoteo lying on one of the beds. Recognizing him as the man who had driven Duarte and Brum, they arrested him. Shortly after his arrest, Timoteo invoked his right to counsel.

After the agents arrested Timoteo, they asked Miliaris for his consent to search the room. Miliaris gave limited oral consent to search "his possessions" and the common areas of the room. He refused to sign a consent-to-search form. The agents then asked Timoteo which luggage belonged to him; they did not search Timoteo's bags. They then searched the other bags that Timoteo said did not belong to him and found a green duffle bag containing approximately $460,000 in United States currency, $40,000 in Canadian currency, cell phones, and two passports. Both Miliaris and Timoteo denied owning or having any knowledge of this bag.

Timoteo filed a pre-trial motion to suppress the evidence seized by agents following the warrantless search of his hotel room. Timoteo argued that the search violated the Fourth Amendment because agents illegally entered his hotel room without a warrant, without exigent circumstances, without consent, and without probable cause.

After conducting an evidentiary hearing, the district court denied Timoteo's motion in a written order. The district court determined that the warrantless arrest of Miliaris was justified by exigent circumstances and, therefore, did not violate the Fourth Amendment. The district court determined that after Duarte and Brum's arrest, the agents feared that Timoteo and other

coconspirators would be alerted. The agents also knew from experience that large drug transactions frequently involve firearms. The district court also determined that all of the suspects were Canadian citizens and that the agents had to arrest them before they could flee.

Additionally, the district court determined that the warrantless entry into the hotel room and arrest of Timoteo were lawful under the Fourth Amendment, since they were made to ensure that evidence was preserved, to prevent flight, and for the agents' safety. Finally, the district court determined that Miliaris consented to the warrantless search of the hotel room. The district court found that Miliaris was aware of his right to refuse consent, since he gave limited oral consent to search his possessions and the common areas of the hotel room and refused to sign a consent-to-search form. In the alternative, the district court determined that both Miliaris and Timoteo lacked standing to challenge the search of the green bag.

## STANDARD OF REVIEW

"In an appeal of a denial of a motion to suppress evidence, 'we review the district court's factual findings for clear error and its legal conclusions, including its ultimate conclusion as to the constitutionality of the law enforcement action, de novo.'" *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009) (quoting *United States v. Chavez*, 281 F.3d 479, 483 (5th Cir. 2002)). "The evidence presented at the suppression hearing must be viewed in the light most favorable to the prevailing party." *Id.*

## DISCUSSION

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Warrantless searches and seizures are "per se

unreasonable unless they fall within a few narrowly defined exceptions." *United States v. Roberts*, 274 F.3d 1007, 1011 (5th Cir. 2001).

## A.    Warrantless Arrest of Miliaris

Timoteo argues that the arrest of Miliaris was unlawful and that the unlawful arrest invalidated Miliaris's consent to search the hotel room. The Supreme Court has held that "Fourth Amendment rights are personal rights," and "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing." *Alderman v. United States*, 394 U.S. 165, 171-72 (1969). Timoteo has no standing to challenge the lawfulness of Miliaris's arrest.

## B.    Warrantless Entry into Hotel Room and Arrest of Timoteo

"Normally, absent a warrant the police may not enter a home except with consent or in 'exigent circumstances.'" *United States v. Gould*, 364 F.3d 578, 587 n.9 (5th Cir. 2004) (en banc). This Fourth Amendment protection extends to guests in hotel rooms. *United States v. Richard*, 994 F.2d 244, 247 (5th Cir. 1993). A warrantless search may be legal "when there is compelling need for official action and no time to secure a warrant." *Michigan v. Tyler*, 436 U.S. 499, 509 (1978); *see also United States v. Gomez-Moreno*, 479 F.3d 350, 354 (5th Cir. 2007) ("Warrantless searches of a person's home are presumptively unreasonable unless the person consents, or unless probable cause and exigent circumstances justify the search."). "[N]o amount of probable cause can justify a warrantless search or seizure absent [such] exigent circumstances." *Horton v. California*, 496 U.S. 128, 137 n.7 (1990) (internal quotation marks and citation omitted). "Thus, if officers have no warrant and no consent, even if they have probable cause and statutory authority to arrest a suspect, they must also have exigent circumstances to enter." *Richard*, 994 F.2d at 247.

Exigent circumstances may be found if there is a risk to the safety of law enforcement agents or bystanders or a risk that evidence may be destroyed. *United States v. Blount*, 123 F.3d 831, 837 (5th Cir. 1997). The following factors, among others, affect the exigency analysis:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the reasonable belief that contraband is about to be removed; (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought; (4) information [indicating] the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.

*United States v. Vega*, 221 F.3d 789, 800 (5th Cir. 2000). Whether exigent circumstances exist is a question of fact reviewed for clear error. *United States v. Howard*, 106 F.3d 70, 74 (5th Cir. 1997).

The issue is whether the agents' warrantless entry into the hotel room and arrest of Timoteo were supported by exigent circumstances. Even if the agents had probable cause to arrest Timoteo, they had to have exigent circumstances to enter the hotel room. *See Richard*, 994 F.2d at 247. The circumstances, viewed objectively, must justify the action taken. *Scott v. United States*, 436 U.S. 128, 138 (1978) (noting the "standard of objective reasonableness"); *Ohio v. Robinette*, 519 U.S. 33, 38 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.") (quotation omitted). However, "[i]f reasonable minds could differ, we will not second-guess the judgment of experienced law enforcement officers concerning the risks of a particular situation." *United States v. Hearn*, 563 F.3d 95, 106 (5th Cir. 2009) (quotation omitted).

The district court found that, after the arrest of Miliaris, "the officers did not know if others had seen the arrests and, if so, whether the others were

armed, in flight, or destroying evidence." Since the agents knew that the driver of the Hyundai had entered the hotel and that he was not the man who came out when the agents called the room, they knew that someone else was also in the hotel room. It was reasonable for the agents to believe that this man, alarmed when Miliaris did not return, would barricade himself in the hotel room with a firearm, potentially endangering the agents and other hotel guests; attempt to destroy evidence; or attempt to flee the scene. The district court's finding that exigent circumstances justified the warrantless entry was not clear error.

Timoteo argues, however, that the exigent circumstances were created by the agents, who cannot thereby use them to justify their warrantless entry. *See Hearn*, 563 F.3d at 105-06; *see also United States v. Webster*, 750 F.2d 307, 327-28 (5th Cir. 1984); *United States v. Thompson*, 700 F.2d 944, 949-51 (5th Cir. 1983). "When determining whether the government created the exigent circumstances, this Court considers not just the motivation of the officers, but also the reasonableness and propriety of the investigative tactics that created the exigency." *Hearn*, 563 F.3d at 106. The district court determined that the agents did not create the exigent circumstances because they had no control over when the drug transaction took place; they had to proceed according to Duarte and Brum's timetable and arrest the suspects before they could flee. Timoteo argues on appeal that agents had learned from Duarte and Brum that the timeline for finishing the deal extended to 8:00 p.m., which gave agents several hours to obtain a warrant. Agents acknowledged at the suppression hearing that a warrant affidavit had already been prepared and a judge was available to sign it on relatively short notice. Given these undisputed facts, Timoteo argues, the district court committed clear error in finding that the agents did not create the exigent circumstances on which they rely.

We need not address Timoteo's factual argument since there are ample grounds in the record supporting the district court's finding. *See Sojourner T v.*

*Edwards*, 974 F.2d 27, 30 (5th Cir. 1992) (court can "affirm the district court's judgment on any grounds supported by the record"). Our "manufactured exigency" cases have recognized a distinction between law enforcement actions that inadvertently set in motion a chain of events that create exigent circumstances, and cases where the police should have foreseen that their actions would create exigent circumstances. Perhaps the best example is in *Thompson*, where agents made a warrantless entry into a home when an officer, working undercover, was recognized by one of the suspects. 700 F.2d at 951. This court remanded for a factual determination of whether the dangerous situation was inadvertent or whether the officer deliberately put himself in a situation where it was foreseeable he would be recognized. *Id.; see also United States v. Scheffer*, 463 F.2d 567, 574-75 (5th Cir. 1972), *cert. denied sub nom. Stecher v. United States*, 409 U.S. 984 (1972) (exigent circumstances manufactured when agents controlled timing of drug buy). By contrast, we have upheld warrantless entries when the agents were reacting to exigent circumstances they could not have foreseen. *See, e.g.*, *Hearn*, 563 F.3d at 105-07 (officers did not manufacture exigent circumstances when suspect opened hotel door several doors down as officers attempted to enter wrong room); *United States v. Newman*, 472 F.3d 233, 239 (5th Cir. 2006) (exigent circumstances not manufactured when suspect bolted out of front door and jumped over six-foot tall fence as officers were approaching for lawful "knock-and-talk").

In this case, the agents did not know that there was a second man in the hotel room. Therefore, it was not foreseeable to the agents that Miliaris would emerge from the hotel room and potentially tip off Timoteo to their presence. While the exigent circumstances justifying the warrantless entry were "caused" by the agents' own acts, the agents did not "manufacture" the exigent circumstances. The warrantless entry was justified.

## C. Consent to Search

Finally, Timoteo argues that Miliaris's consent to the search was not freely given. Because the evidence discovered during the search was used against him, Timoteo has standing to challenge the validity of the search even though consent was given by a third party. *United States v. Vega*, 221 F.3d 789, 801 (5th Cir. 2000). When consent is considered to have validated a warrantless search, the court must examine "the totality of the circumstances to determine whether the consent was knowingly and voluntarily given." *United States v. Davis*, 749 F.2d 292, 294 (5th Cir. 1985). "The voluntariness of consent is a question of fact" that is reviewed for clear error. *United States v. Solis*, 299 F.3d 420, 436 (5th Cir. 2002). A federal court "considers six factors in evaluating the voluntariness of consent to search, all of which are relevant, but no one of which is dispositive or controlling." *United States v. Santiago*, 410 F.3d 193, 199 (5th Cir. 2005). Those six factors are:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*Id*. The district court determined that Miliaris was aware he could refuse to consent to the search as he gave only limited consent to search his possessions and the common areas of the room and he refused to sign a consent-to-search form. This factual finding is not clearly erroneous.

## CONCLUSION

The judgment of the district court is AFFIRMED.