Irvin SCOTT, Jr., Petitioner-Appellant,

v.

Ross MAGGIO, Jr., Warden, Louisiana State Penitentiary, and William J. Guste, Jr., Attorney General, Respondents-Appellees.

No. 81–3515
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 20, 1983.

W. Arthur Abercrombie, Jr., Baton Rouge, La. (court-appointed), for petitioner-appellant.

William Robert Campbell, Jr., Asst. Dist. Atty., New Orleans, La., for respondents-appellees.

Before BROWN, GEE and JOLLY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The question is, did the District Court err in accepting the recommendation of a magistrate to deny Irvin Scott, a convicted armed robber, habeas relief pursuant to 28 U.S.C. § 2254?

The answer is no and we affirm.

The facts are these. Going about the quotidian affairs of his employment as a vending machine operator, Kenneth Oliver was robbed of his watch, wallet and keys at gunpoint [1] in broad daylight on a New Orleans street. Moments after this crime the victim contacted the police. Miraculously, minutes after the report of the robbery, police officers arrived at the scene. The

---

1. The "gun" was later seized by the police and it turned out to be nothing more than a toy pistol. Notwithstanding the harmless nature of

victim gave the police a description [2] of the three males who had robbed him and the direction in which they fled. Just as the police began to give chase, there occurred an unusual, but fortuitous, happenstance. An innocent bystander who unfortunately, but understandably, desired to remain nameless directed the police to a house where he had seen the three males enter. Reasonably believing that these could be the males who had robbed Kenneth Oliver, the police quickly proceeded to this house which was less than a full block from the scene of the crime. Finding the rear door of the house ajar, one of the officers lightly pushed the door open and discovered sitting on a bed three men who matched the description of the robbers given by the victim. The officer then escorted these three men and two others who were in another part of the house to the backyard. Kenneth Oliver was brought to this location where he positively identified the robbers from a backyard line-up of five teenaged males. The three were then arrested, Scott was among them. One of them advised the police where to find the victim's personal belongings which were taken from him during the course of the robbery.

### The Results of Good, Fast, and Proper Police Work

On August 4, 1977 a Louisiana jury found Irvin Scott and two of his cohorts, Milton Reed and Robert Desdunes, Jr., guilty of armed robbery. Reed and Desdunes were sentenced to 30 years at hard labor in a Louisiana prison.[3] Scott was sentenced to 40 years at hard labor upon entering a plea of guilty under Louisiana's multiple offender statute. Their convictions and sentences were affirmed by the Louisiana Supreme Court. 358 So.2d 1271 (La.1978).

While their appeal was pending, the defendants filed a petition for writ of mandamus-prohibition alleging that their arrest and the seizure of certain evidence were unlawful due to the police officers' warrantless entry into the residence wherein they were apprehended. This writ was refused in an unpublished Order. *State v. Scott*, No. 61,026. After Scott had exhausted his remedies on direct appeal, he sought collateral relief in the state courts. On May 15, 1980, he sought a habeas corpus writ, alleging as grounds for relief the following: (a) that the line-up at which he was first identified by the victim was impermissibly suggestive and improper and (2) that his sentence was invalid because it was obtained by the use of a prior invalid conviction. The Supreme Court of Louisiana denied the writ in an unpublished Order. *State ex. rel. Scott v. Blackburn*, No. 67,583.

Scott then sought habeas in federal court. The four issues now before us on appeal

---

this "gun", Kenneth Oliver was placed in fear of his life.

2. Upon cross-examination by defendants' counsel at trial, Oliver repeated the description of the defendants which he gave to the police. [Examination by Defense Counsel]

Q. Mr. Oliver, how long did the incident last? How many minutes did it last?
A. You mean the robbery?
Q. Yes.
A. I'd say about a minute and a half, two minutes, something like that.
Q. Had you ever seen any of these people at that time?
A. Did I see any of them?
Q. Before, you ever seen them before?
A. Before? No.
Q. Do you remember how they were dressed?
A. They had on white T-shirts. One of them had on blue pants, and one of them had on blue shorts.
Q. Blue shorts?
A. Blue shorts.
Q. Do you recall what kind of clothes the other one had?
A. I think they were a tan or a khaki, something like that.
Q. Do you remember what kind of shoes they had on?
A. No.
Q. Did they have anything written on these T-shirts?
A. No, they were white.

One of the officers testified at trial that Oliver also stated that the men who robbed him were in their "late teens, seventeen, eighteen years old."

3. This Court affirmed a denial of habeas relief to Desdunes and Reed in an unpublished opinion rendered November 25, 1980.

from its denial are that: (i) his warrantless arrest and the seizure of evidence by the police were unconstitutional, (ii) he was the victim of an improper identification procedure, (iii) the hearsay evidence of the unknown bystander was improperly admitted at his trial, (iv) his sentence was invalid because of the use of an invalid prior conviction for enhancement purposes.

### The Unequivocal Total Exhaustion Requirement

Important considerations of federalism and comity require our first inquiry to focus upon whether Scott has exhausted his state remedies. *Bufalino· v. Reno,* 613 F.2d 568 (5th Cir.1980). At the outset we observe that Louisiana has conceded exhaustion on all four grounds alleged in Scott's petition. Ordinarily a concession of this sort constitutes a waiver and a reviewing court is free to decide all issues raised in a habeas petition on the merits. *Hopkins v. Jarvis,* 648 F.2d 981, 983 n. 2 (5th Cir.1981). Whether a concession of exhaustion by a state can satisfy the total exhaustion rule remains an undecided question[4] and is not raised by

this appeal. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). In *Rose,* the Supreme Court held that a federal habeas petition presenting both exhausted and unexhausted claims *must* be dismissed by a federal district court. It does appear that Scott has exhausted his state remedies in the sense that all of his present claims were presented to a state court at some point. On direct appeal of his conviction, Scott raised among the grounds stated in his habeas petition only the improper admission of hearsay evidence issue. The Louisiana Supreme Court found this contention to be without merit and went on to state that "even if we were to find the testimony inferentially hearsay we would not find this admission reversible error." His other claims were presented to the state courts through petitions for writs of mandamus-prohibition[5] and habeas corpus.[6] All were rejected.

### A Stone v. Powell Exception?

Yet, evidence of exhaustion of state court remedies may not always mean that a habe-

---

**4.** We point out that the Court did not expressly consider the question of whether a district court is required to dismiss a mixed habeas petition when the state, as here, has conceded exhaustion. There is language in the Court's opinion which suggests, however, that total exhaustion means exactly what it says. *See,* e.g., *Rose v. Lundy,* 455 U.S. at 518, 102 S.Ct. at 1203, 71 L.Ed.2d at 388 ("A *rigorously enforced* total exhaustion rule will encourage state prisoners to seek full relief first from the state courts . . .".); *Id.* ("*Requiring dismissal* of petitions containing both exhausted and unexhausted claims will relieve the district courts of the difficult if not impossible task of deciding when claims are related, and will reduce the temptation to consider exhausted claims."); *Id.,* 455 U.S. at 520, 102 S.Ct. at 1204, 71 L.Ed.2d at 389 ("*[S]trict enforcement* of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition."); *Id.,* 455 U.S. at 522, 102 S.Ct. at 1205, 71 L.Ed.2d at 390. ("[A] *total exhaustion rule* promotes comity and does not impair the prisoner's right to relief . . .".). *But cf. Felder v. Estelle,* 693 F.2d 549 (5th Cir.1982).

**5.** Warrantless arrest and seizure of evidence issues were presented while Scott's state appeal was pending. The writ was refused with

the notation that "an appeal has been lodged, raising the same point." The appeal, however, did not address this "point" at all. Taken directly from Scott's brief on direct appeal, specified errors were as follows:

*Specification of Errors*

1. Assignment of Error Nos. 1, 2 and 3 relate to the Court's ruling on the defendants' Application for a Bill of Particulars.

2. Assignment of Error No. 4 relates to the inferential hearsay testimony concerning an unknown tipster to indicate that the defendants were the perpetrators.

3. Assignment of Error No. 5 relates to use of testimony by police as evidence of identification by the victim in violation of the best evidence rule.

4. Assignment of Error No. 6 relates to questioning by the State on cross-examination of defendant concerning the credibility to a State witness. (abandoned.)

5. Assignment of Error No. 7 relates to the Court's ruling denying defendants a New Trial.

**6.** Improper identification procedure and the use of an invalid prior conviction for enhancement purposes issues were raised in the state habeas petition.

as petitioner has received plenary review of all his constitutional claims. A situation might arise where a state court, perhaps through oversight or inadvertence, failed to consider fully the multiple claims of a habeas petitioner who has flooded it with various petitions. Scott's case may present just such a situation on his Fourth Amendment claims—warrantless arrest and seizure of evidence—since there is nothing in the Louisiana Supreme Court's opinion and orders which indicate that Scott's Fourth Amendment claims were, though raised, considered by that court. Ordinarily, of course, Fourth Amendment issues are not cognizable in a § 2254 proceeding where the state has provided the habeas petitioner with an opportunity for a full and fair litigation of his Fourth Amendment claim. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Smith v. Maggio,* 664 F.2d 109 (5th Cir.1981); *Caver v. Alabama,* 577 F.2d 1188 (5th Cir.1978). But since these were not discussed, it can be fairly argued that Scott has not been presented with the full and fair opportunity of which *Stone v. Powell* speaks. In light of this, we assume, without deciding, that we are empowered by *Stone v. Powell* to pass on the merits of the Fourth Amendment claims raised by Scott's habeas petition.[7]

Scott argues that under the doctrine of *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) which established as unconstitutional the warrantless and nonconsensual entry into a suspect's home to make a routine felony arrest, his conviction should be reversed. He claims that since a warrantless entry into a suspect's home had not been declared to violate the Fourth Amendment at the time of his trial and conviction, his conviction is subject to constitutional attack. This contention, while superficially appealing, is without merit.

A threshold question exists, however, as to whether *Payton v. New York* can be applied retroactively. Fortunately, this question was decided by the Supreme Court in *United States v. Johnson,* —— U.S. ——, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). Johnson held that *Payton* was to apply "retroactively to all convictions that were not yet final at the time the decision was rendered." *Id.* —— U.S. at ——, 102 S.Ct. at 2594, 73 L.Ed.2d at 222. This holding would not seem to cover Scott's conviction as *Payton* was decided April 15, 1980 and Scott's conviction was affirmed on direct appeal on May 22, 1978, nearly two full years before the *Payton* decision was announced. Notwithstanding this fact, curiously, the court says in *Johnson* that its decision in that case does not address "the retroactive reach of ... Fourth Amendment decisions to those cases that may still raise Fourth Amendment issues on collateral attack." *Id.* (note omitted). Still, we perceive no basis for his conclusion that because warrantless entries into suspects' homes had not been declared unconstitutional at the time of his trial, this somehow renders his conviction a nullity.

But assuming arguendo that *Payton* may remotely bear on this case, the dissimilarity of this case and the issues considered in *Payton* can readily be shown. The bottom line is that petitioner's contentions founder on an incomplete reading of *Payton.* *Payton* deliberately did not address the separate but related issue of whether a warrantless entry into a *third person's* home to arrest a suspect would violate the Fourth Amendment. 445 U.S. at 582–83, 100 S.Ct. at 1377–78; Cf. *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). Scott concedes that he was not at his own home at the time of his arrest. He was at the home of a friend. In reality, he has no standing to raise the *Payton* doctrine as a defense. Second, *Payton* did not even consider the very significant issue of whether a warrantless entry into a suspect's home to effect an arrest could be justified under exigent circumstances. *Id.* Scott had been involved

---

**7.** A definitive ruling on this difficult point is unnecessary since we find no merit in the claims and the same result obtains whether or not we are empowered to review them by *Stone v. Powell.*

in a robbery less than one block away from the house in which he was apprehended. The robbery had occurred not more than fifteen to thirty minutes before he was apprehended. A fairly good description of Scott and his buddies in crime had been given the police by both the victim and a bystander. Time lapsed in securing a warrant might have resulted in the destruction of valuable evidence and the escape of clearly identified suspects. These results are not contemplated by any decision of this or any other court. We are of the view that exigent circumstances existed in the present case to justify the warrantless entry into the house and arrest of Scott. Therefore, no matter what theory Scott asserts to attack his conviction under the Fourth Amendment, and whether or not we are empowered to review his claims under it, he cannot prevail.

### The View from the Rear

Scott contends that the backyard line-up where he was identified by the victim of the crime was unduly suggestive and improper. In order to determine whether a line-up or other identification procedure was improper and thereby violative of due process, a two prong test is employed. We must determine whether the identification procedure was impermissibly suggestive, and, if so, whether there was a substantial likelihood of misidentification. *Passman v. Blackburn,* 652 F.2d 559 (5th Cir.1981); *Preacher v. Estelle,* 626 F.2d 1222 (5th Cir. 1980). Although it might be urged that the backyard line-up procedure employed by the police in this case might well have overtones of suggestiveness, we do not believe that it was *impermissibly* so. Regardless of any possible suggestiveness, however, when

considering the "totality of the circumstances," *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967), we conclude that a substantial likelihood of misidentification was more of Scott's dream than the reality. The factors in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), are clearly satisfied in this case. During the robbery, which lasted for at least two minutes, Oliver had a close-up view of the men who had robbed him. He described them to the police with commendable detail and specificity. The line-up took place very near the scene of the robbery in broad daylight as did the robbery itself. The backyard line-up took place within an hour or less of the crime. Oliver displayed no uncertainty regarding his identification of Scott and the others at the line-up. Thus, the backyard line-up, far from deserving our condemnation, was necessitated because of swift and efficient police work. *Marden v. Purdy,* 409 F.2d 784 (1969); *Allen v. Estelle,* 568 F.2d 1108 (5th Cir.1978). These facts demonstrate that the likelihood of misidentification was not only *in*substantial, it was close to impossible. Reliability, "the linchpin in determining the admissibility of identification testimony," *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) could hardly be more prominent.

### The Almost Hearsay Evidence

Scott further asserts that hearsay testimony was improperly admitted into evidence at his state trial. This assertion must also fail. A review of the testimony in question reveals that the supposed hearsay testimony was never actually received into evidence.[8] More importantly from our

---

8. [Examination of Officer Montalbano by Prosecutor]:

Q. Take your time and tell the ladies and gentlemen of the jury what you saw, what you observed and what you did in making this arrest.

A. About 2 o'clock in the afternoon, we received a signal 64G, an armed robbery in the 2500 block of Danneel. Upon arrival at that location I met the victim, Kenneth Oliver, and I began to investigate the robbery, and it was only about one minute after I was there that an unknown Negro male approached me and asked me to step inside the liquor store. I stepped inside and the unknown Negro male stated that—

[Defense Counsel]
 Objection—

Examination by [Prosecutor]

vantage point, we have consistently emphasized our unwillingness to disturb evidentiary findings by state courts on habeas unless the state court's error resulted in a denial of "fundamental fairness" to the petitioner. *Meyer v. Estelle,* 621 F.2d 769 (5th Cir. 1980). We cannot agree that the testimony here was hearsay. The officer simply testified to what he did when arriving at the scene of the crime. To the extent that hearsay comes into play, it was objected to strenuously by Scott's counsel and was never fully developed. But hearsay or not, the challenged testimony does not rise to a level such as to deny Scott fundamental fairness.

### A Guilty Plea Concludes It

■ Finally, Scott argues that his 40 year sentence in this case is flawed because of the use of a prior invalid conviction for enhancement purposes. This argument is wholly without merit. Scott waived any right to challenge his prior conviction when he pleaded guilty to being a multiple offender while represented by counsel at the sentencing stage of his trial. *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Kemph v. Estelle,* 621 F.2d 162 (5th Cir.1980).

Because Scott's petition presents no claims which would entitle him to relief, the denial of habeas by the lower court was correct.

AFFIRMED.

Q. As a result of your conversation with this person what did you do?

A. We were directed to 2605 Danneel, and the three perpe—

[Defense Counsel]

Objection. It's also hearsay.

By the Court:
  What did you do yourself?

[Prosecutor]:
  I believe that's what he saying. He went to 2605 Danneel.