**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Warren C. HULTGREN, Jr., Fonda Gayle Hellums and Donald Thomas Rondinelli, Defendants-Appellants.**

**No. 82–1457.**

United States Court of Appeals, Fifth Circuit.

Aug. 11, 1983.

Warren Burnett, Larry Zinn, Galveston, Tex., for Hultgren and Hellums.

Blake Hansen, Odessa, Tex., Court-appointed, for Rondinelli.

Sidney Powell, Ricardo Gonzalez, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Appeals from the United States District Court for the Western District of Texas.

Before WILLIAMS and JOLLY, Circuit Judges, and PUTNAM *, District Judge.

JERRE S. WILLIAMS, Circuit Judge.

This case arises out of a Drug Enforcement Administration (DEA) investigation and an alleged precipitant arrest following the failure of a confidential informant's transmitter during a drug deal. Appellants Warren G. Hultgren, Jr., and Donald T. Rondinelli challenge the district court's denial of their motions to suppress the evidence seized pursuant to their warrantless arrests within the home of the third defendant to this appeal, Fonda G. Hellums. Further, appellants Hultgren and Hellums challenge their convictions on the ground that their indictments were factually insufficient in that they failed to state the period of time during which the conspiracy alleged was operative. We find that the warrantless arrests of Hultgren and Rondinelli, as well as the search incident thereto, were proper. Further, we conclude that the indictments against Hultgren and Hellums were sufficient. Accordingly, we affirm.

I. *Facts*

On February 2, 1982, using confidential informant Bruce Foster, DEA agents recorded a meeting concerning a drug transaction between appellant Hellums, co-defendant Stephen J. Sadowski[1] and Foster at Hellums' residence. After Sadowski introduced Hellums to Foster, Hellums left the house. When she returned, she sold Foster approximately one ounce of cocaine. No arrests were made at that time.

On March 1, 1982, near midnight, Foster informed DEA agent Howard Whitworth that a cocaine deal with Hultgren and Hellums was to "go down" sometime on March 2, 1982. At 3:00 p.m. on March 2, Foster informed Whitworth that a sample was to be delivered at about 5:00 p.m. at Hellums' home, located in a residential area of Midland, Texas. At that time the final arrangement for the transaction would be made. At 6:20 p.m., Foster again contacted the DEA agent and told him that he had met with Hultgren and Hellums, received a sample of the cocaine, and set the transaction for the larger quantity for 8:00 p.m. that evening. Foster then proceeded to a Midland hotel, pursuant to the agent's instructions. The agent had the sample tested at 7:00 p.m. and ascertained that it was cocaine. Foster was then searched, as was his car, and Foster was fitted with a transmitter. At 7:30 p.m. Foster returned to Hellums' house where the delivery was to take place. DEA surveillance was established, involving approximately six to eight officers. Although the deal was set for 8:00 p.m., Hultgren did not arrive until approximately 9:30 p.m. with appellant Rondinelli, who was hitherto unknown to the DEA agents. The DEA agents monitored the conversation between Foster, Hellums, Hultgren, and Rondinelli relating to

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. Sadowski is not a party to this appeal.

prices, quantities, setting up the scales, and future transactions.

Then, the transmitter being carried by Foster ceased broadcasting, for reasons unknown. Only static could be heard by the monitors. Whitworth alerted the other agents to prepare to enter the house, and minutes later, entrance was expediently accomplished. The agents entered the house by knocking and announcing their presence and then breaking down the front door when they saw or heard the people trying to escape. Hellums, Hultgren, and Rondinelli were apprehended as they attempted to leave the house through the back door. While searching the house for other persons, the agents discovered in the bedroom a set of triple beam scales, a small plastic bag containing a white powdery substance, and a "baggie" of marijuana.

Hultgren, Hellums and Rondinelli were charged with conspiracy to possess cocaine with intent to distribute during a period from February 25 to March 2, 1982. Hellums was charged with conspiracy to possess with intent to distribute during the period from February 1 to February 2, 1982 and with possession of cocaine on February 2, 1982. Rondinelli, Hultgren and Hellums were also charged with possession of cocaine on March 2, 1982. All three appellants moved to suppress the evidence seized at the time of their warrantless arrests at Hellums' residence on March 2, 1982. The district court held the suppression hearing on May 20, 1982, and denied the motions to suppress.

Appellants waived the right to trial by jury. By agreement between the government and appellants, the case was tried before the court on stipulated facts and evidence and the testimony heard at the suppression hearing. The court found Hellums guilty of conspiracy to possess cocaine with intent to distribute on February 1 through 2, 1982. It found Hultgren and Rondinelli guilty of conspiracy to possess with intent to distribute from February 25 to March 2, 1982. The other charges against appellants were dismissed. Each appellant was then sentenced to a term of five years with eligibility for parole pursuant to 18 U.S.C. § 4205(b)(2). Each appellant filed a timely notice of appeal.

## II. Warrantless Arrest and Search

A warrant to search or arrest was not issued at any time, nor was there an application for one. The district court concluded that probable cause for the issuance of a search warrant for the cocaine was not established until 6:20 p.m. on March 2, 1982, when the sample was delivered to Foster.[2] Similarly, probable cause for the issuance of an arrest warrant on the possession charge, Count 4 of the indictment, did not arise at least until 6:20 p.m. on March 2.[3] The district court concluded, however, that

2. The district court based its conclusion upon careful and persuasive reasoning:

There was no evidence that contraband was present in Defendant Hellum's house prior to the delivery of the sample. While the cocaine deal was intended to "go down" as of midnight, March 1, this fact alone would have been insufficient to establish probable cause for the issuance of a search warrant. *United States v. Juarez,* 573 F.2d 267 (5th Cir.1978), *rehearing denied,* 577 F.2d 1134, *cert. denied,* 439 U.S. 915, 99 S.Ct. 289, 58 L.Ed.2d 262; *United States v. Gardner,* 553 F.2d 946 (5th Cir.1977), *cert. denied,* 434 U.S. 1011, 98 S.Ct. 722, 54 L.Ed.2d 753.

*U.S. v. Lowe,* 575 F.2d 1193 (6th Cir.1978), *cert. denied,* 439 U.S. 869, 99 S.Ct. 198, 58 L.Ed.2d 180, is distinguishable from the factual situation at bar. In that case, a controlled delivery was effected after postal officials opened a package from a foreign country which contained heroin. The package was carefully resealed and delivered to the addressee, after a warrant was issued. The validity of the warrant was sustained, the Court finding that there was probable cause to believe that the contraband would be present when the warrant was executed. In the case at bar, at any time prior to 6:20 p.m. on March 2, 1982, there was no guarantee that contraband would be present in Defendant Hellum's house on March 2, 1982, or that the deal would "go down" at any location. The dangers inherent in issuing search warrants for residences where no contraband is reasonably believed to be present is self-evident and such procedure is subject to potential abuse.

3. The district court's order on the motions to suppress assumes, rather than explicates, this conclusion. The parties recognize, and do not dispute, this implicit finding.

probable cause for the conspiracy charge in Count 2 of the indictment[4] arose by midnight on March 1, 1982.[5]

[■] The parties to this appeal do not take issue with the district court's findings of probable cause. Rather, appellants Ron-

**4.** The conspiracy referenced here is the one culminating in appellants' arrest on March 2.

**5.** The district court reasoned: "Under this Court's understanding of the law, the conspiracy, if any, was complete near midnight on March 1, 1982, when it was agreed between Hultgren, Hellums and the confidential informant that a cocaine deal would be accomplished sometime on March 2, 1982."

**6.** The government contends for the first time on appeal that appellants Rondinelli and Hultgren do not have standing to contest the March 2 search of Hellums' house. The Supreme Court has stated that Fourth Amendment rights against unreasonable searches "are personal in nature, and cannot bestow vicarious protection on those who do not have a reasonable expectation of privacy in the place to be searched." *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 1651, 68 L.Ed.2d 38 (1981). *See United States v. Salvucci,* 448 U.S. 83, 86, 100 S.Ct. 2547, 2550, 65 L.Ed.2d 619 (1980); *Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). This inquiry is rooted in the particular circumstances of each case. *See United States v. Briones-Garza,* 680 F.2d 417, 420 (5th Cir.), *cert. denied,* — U.S. —, 103 S.Ct. 229, 74 L.Ed.2d 181 (1982); *United States v. Haydel,* 649 F.2d 1152, 1154–55 (5th Cir.1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 140 (1982). The government argues that under the circumstances of the case at hand, appellants Rondinelli and Hultgren did not have a legitimate expectation of privacy in Hellums' home, and therefore do not have standing to contest the seizure of the evidence introduced against them at trial. On the other hand, Rondinelli and Hultgren argue that since the search was incident to their arrests, the general rule for determining the propriety of a search alone, as enunciated above, has no application. Alternatively, they argue, that under the circumstances of the immediate case they would have a "legitimate expectation of privacy" were that test to apply. Finally, they contend that in any event the government waived its right to contest their standing to suppress the evidence seized on March 2 since it failed to raise the standing issue below. *Cf. Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 1646, 68 L.Ed.2d 38 (1981) (the government can lose its right to challenge a defendant's "standing" claim of le-

dinelli and Hultgren contend that their warrantless arrest and search in the private home of a third person, Hellums, was impermissible since the government failed to obtain or even to seek a warrant when probable cause for an offense had earlier arisen.[6] They argue that the district court

gitimate expectation of privacy through its assertions, concessions, and acquiescence in the courts below); *United States v. Sanchez,* 689 F.2d 508, 509 n. 1 (5th Cir.1982) (declining to consider question raised first on appeal, therefore assuming, as all parties did in the trial court, that defendant could complain of the stop and search). *But cf. Scott v. Maggio,* 695 F.2d 916 (5th Cir.), *cert. denied,* — U.S. —, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983) (defendant, arrested in home of third party had no standing to raise Fourth Amendment challenge to entry, but in any event exigent circumstances justified entry); *United States v. Irizarry,* 673 F.2d 554, 556–67 (1st Cir.1982) (defendant "never carried his initial burden of offering facts from which a court might reasonably infer his standing," and hence government did not waive right to challenge standing on appeal).

Since we conclude, *infra,* that the evidence was validly seized incident to appellants' arrests, we decline to pass upon whether Rondinelli and Hultgren would have been entitled to challenge the introduction of the seized evidence against them at their trial had the government raised the standing issue below. In declining to pass upon this issue, we note that the Supreme Court has "discarded reliance on concepts of 'standing' in determining whether a defendant is entitled to claim the protections of the exclusionary rule," in favor of the simple inquiry of "whether the defendant's rights were violated by the allegedly illegal search or seizure." *United States v. Salvucci,* 448 U.S. 83, 87 n. 4, 100 S.Ct. 2547, 2551 n. 4, 65 L.Ed.2d 619 (1980) (citing *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *cf. United States v. Hansen,* 652 F.2d 1374, 1379 & n. 2 (10th Cir.1981) (under *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), "standing" is no longer a separate issue and the relevant inquiry is the substance of defendant's claim that he possessed a "legitimate expectation of privacy" in the area searched). The "standing" question raised here, therefore, is not jurisdictional and need not be resolved. *Cf. Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 1646–47, 68 L.Ed.2d 38 (1981) (concluding that the government waived its right to contest defendant's right to challenge the legality of the search); *Rakas v. Illinois,* 439 U.S. 128, 132 n. 2, 99 S.Ct. 421, 424 n. 2, 58 L.Ed.2d 387 (1978) (the constitutional requirement is met where

erred in finding that "exigent circumstances" justified the warrantless arrest and search, and therefore their motions for suppression should have been granted.[7]

■ The Supreme Court has had frequent occasion to address the narrow circumstances under which a warrantless arrest or search of one's *own home* may be proper. In such cases, the Supreme Court has observed that in the absence of consent:

> In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980). *See Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 1647, 68 L.Ed.2d 38 (1981); *Coolidge v. New Hampshire,* 403 U.S. 443, 474–75, 91 S.Ct. 2022, 2042–43, 29 L.Ed.2d 564 (1971); *Johnson v. United States,* 333 U.S. 10, 13–15, 68 S.Ct. 367, 368–69, 92 L.Ed. 436 (1948). The purpose behind the warrant requirement, to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search, is the same whether the home entered is one's own or that of another. However, the interests underlying the warrant requirement leading to the sharp line-drawing at the threshold of the home, are less compelling in the case where the home of another is intruded upon. While in either case the individual interest in protecting his own liberty is identical, the interest in privacy against unwarranted intrusion is less compelling if the person complaining is not the owner. Thus, in the immediate case, where a warrantless arrest and search takes place in the home of a third person, we recognize that the presumption of its invalidity is not strong as it would be had the intrusion been into the complaining party's own home.[8]

At the suppression hearing, the government advanced five factors as showing the existence of exigent circumstances: (1) the lack of sufficient time to prepare an affidavit, locate a magistrate, and obtain a warrant after probable cause arose; (2) the danger to the government informant when the transmitter failed and the conversation could not be monitored; (3) the imminent danger of destruction of evidence; (4) the possibility that persons might escape; and (5) the necessity of having adequate time to brief the informant after probable cause arose. In its rulings on the motion to suppress, the district court found that exigent

the party seeking relief alleges such personal stake or interest in the controversy as to assure the concrete adverseness which Article III requires).

7. The government contends that the issue of the warrantless arrest and search, raised by Rondinelli and Hultgren, is moot because, once the charge of possession of cocaine was dismissed, the evidence seized during the March 2 search was not necessary for their conviction on the February 25–March 2 conspiracy charges. The government reasons that possession is not one of the elements that must be proven to support a conspiracy conviction pursuant to 21 U.S.C. § 846. *See United States v. Vergara,* 687 F.2d 57, 60–61 (5th Cir.1982); *United States v. Davis,* 666 F.2d 195, 201 (5th Cir.1982). The government concludes, therefore, that since there was more than sufficient evidence to sustain the convictions absent consideration of the evidence seized on March 2, the convictions can be sustained absent consideration of the arrest and search questions. We disagree.

The district court explicitly stated at Rondinelli and Hultgren's trial on the merits that it would consider all of the evidence including "all the testimony that I heard in connection with the hearing on the motion to suppress." Because the court considered the evidence seized during the March 2 search in reaching its judgment that Rondinelli and Hultgren were guilty of conspiracy to possess cocaine with the intent to distribute on March 2, the issue of the legality of the arrest and search is not moot.

8. *Cf. United States v. Baldwin,* 691 F.2d 718, 721 (5th Cir.1982) ("property rights play some role in the process of ascertaining the existence of the requisite privacy interest").

Hellums, whose home was entered to effect the warrantless arrests and search, would therefore have a higher expectation of privacy than would Rondinelli and Hultgren. Hellums, however, does not raise objections to the arrest and seizure, as she was convicted only on the earlier February 1–2, 1982 conspiracy charge for which the evidence seized on March 2 was not considered.

circumstances justified the warrantless arrests of Rondinelli and Hultgren. We agree.

### A. *Rondinelli*

■ As to Rondinelli, the existence of exigent circumstances is apparent. Rondinelli's participation in the illicit activities were unknown until he arrived with Hultgren at 9:35 p.m. on the evening of March 2; the DEA agents had not previously learned of his participation during the course of their ongoing investigation. Accordingly, as pointed out by the district court, probable cause for Rondinelli's arrest did not arise until his arrival at 9:35 p.m. By that hour, amidst the agents' surveillance and monitoring of the cocaine transaction "going down" in Hellums' home, there was no time to obtain a warrant. Shortly after Rondinelli's arrival, informant Foster's transmitter failed for reasons unknown, precipitating the agents' expeditious entry of the residence. After considering the record before the court on the motions to suppress, we conclude that the unexplained failure of the transmitter raised the possibility of danger to the informant who was inside and danger of the destruction of the evidence if entry into the house was not promptly effected. *See, e.g., Scott v. Maggio,* 695 F.2d 916, 921 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983) ("Time lapsed in securing a warrant might have resulted in the destruction of valuable evidence and the escape of clearly identified suspects," as exigent circumstances). Thus, the exigent circumstances arising only minutes after the agent's knowledge of Rondinelli's involvement without any doubt justified his warrantless arrest.

### B. *Hultgren*

The warrantless arrest of Hultgren presents a much more difficult question. Clearly, the same exigent circumstances precipitated the entry and arrest of both defendants on the evening of March 2. Hultgren, unlike Rondinelli, was identified as a participant in the illicit dealings under investigation significantly before the exigent circumstances arose. As found by the district court, and not at issue here, probable cause for Hultgren's arrest on the conspiracy charge was established on March 1 and probable cause for the possession charge was established at 6:20 p.m. on March 2. The district court concluded, after considering the evidence presented at the suppression hearing, that the agents could have obtained a warrant for Hultgren's arrest on the conspiracy charge but that ample time did not exist for obtaining a warrant on the possession charge. We find, in light of the record before the district court, that these conclusions were properly drawn.[9]

---

**9.** In so concluding, we note that Rule 41(c), of the Federal Rules of Criminal Procedure, has no application. This rule was amended in 1977 to permit a more expeditious telephonic search warrant where time would not permit the procurement of a conventional warrant. Rule 41, by its terms, refers to *search* warrants and not to *arrest* warrants. While it does permit search and seizure of either a "person for whose arrest there is probable cause, or who is unlawfully restrained," Fed.R.Crim.Pro. 41(b)(4), the Advisory Committee Notes to this 1979 amendment make it clear that the provision was intended to cover two distinct situations not applicable to the case at hand: (1) where an individual for whom probable cause for arrest exists, but is hiding out with someone else; and (2) in searching for a kidnap victim believed to be held captive in a given place. This provision was intended to protect the interests of the individual whose home is entered and not the person who is seized in-

side. *Cf. Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) (distinct interests were implicated by the search of a third party's home for another individual for whom an arrest warrant had issued, and thus in the absence of a search warrant the homeowner's Fourth Amendment rights were violated).

Given the narrow intent behind this rule, *see also* Fed.R.Crim.Pro. 41(h) and the Advisory Committee Notes, and the coverage of arrest warrants in Fed.R.Crim.Pro. 4 and 9, we do not read Rule 41 to extend to arrest situations. Therefore, we do not pass upon the question of whether Rule 41(c) requires resort to telephonic warrants in all cases where time would not permit a conventional search warrant to issue. Our conclusion, however, should in no way be read to sanction the government's position that the courts' purported scarcity of recording equipment excuses resort to the telephonic search warrant provision. The rule contem-

The critical inquiry as to Hultgren, therefore, is whether the agents' failure to avail themselves of the opportunity to obtain a warrant earlier, for the conspiracy conviction, is fatal to the government's claim that subsequent exigent circumstances justified the warrantless arrest on this, as well as the possession, charges.[10] In a recent case, *United States v. Thompson,* 700 F.2d 944, 950 (5th Cir.1983), this Court reaffirmed the principle that "the failure to obtain a warrant at the first opportunity is not a fatal defect." Judge Randall for the Court surveyed the prior cases to this effect:

> In *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), the Supreme Court stated: "The exigency [necessitating seizure of an automobile] may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action." *Id.* at 596, 94 S.Ct. at 2472. Similarly, while strongly condemning the agents' failure to obtain a warrant in *United States v. Mitchell,* 538 F.2d 1230 (5th Cir.1976) (en banc), *cert. denied,* 430 U.S. 945, 97 S.Ct. 1578, 51 L.Ed.2d 792 (1977), we upheld the agents' search of an automobile when exigent circumstances did in fact arise. 538 F.2d at 1233. *See also United States v. Gardner,* [553 F.2d 946, 948 (5th Cir.1977), *cert. denied,* 434 U.S. 1011, 98 S.Ct. 722, 54 L.Ed.2d 753 (1978) ] ("reasonableness of a search [in a home] under exigent circum-

stances is not foreclosed by the failure to obtain a warrant at the earliest practicable moment"). On the other hand, "the opportunity to obtain a warrant is one of the factors to be weighed in determining reasonableness." *Vale v. Louisiana,* 399 U.S. 30, 40, 90 S.Ct. 1969, 1975, 26 L.Ed.2d 409 (1970) (Black, J., dissenting); *see also, United States v. Chuke* [554 F.2d 260, 263 (6th Cir.1977) ]; *United States v. Rubin* [474 F.2d 262, 268 (3d Cir.), *cert. denied,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973) ].

*Ibid.* We went on to recognize, however, that a warrantless search may not be justified on the basis of exigent circumstances which are created by the government itself. We examined our prior decision of *United States v. Scheffer,* 463 F.2d 567 (5th Cir.), *cert. denied,* 409 U.S. 984, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972) which characterized the government's contention that it lacked time to procure a search warrant in the context of a planned and controlled drug delivery as "incredible." *Thompson, supra,* 700 F.2d at 950. The *Thompson* case further recognized that, pursuant to *Scheffer,* " '[s]light delay or the inconvenience of presenting facts to a magistrate are not sufficient circumstances to by-pass the warrant requirement.' " *Thompson,* 700 F.2d at 951 (quoting *Scheffer, supra,* 463 F.2d at 575).

Applying these principles to the particular facts of the case at hand, we agree with the district court's conclusion that the

---

plates that, in the absence of a recording device, a stenographic record may be made by the magistrate. In any event, the Rule could not be frustrated by this easily overcome "obstacle."

**10.** The district court viewed the dispositive issue thus: "What is the effect of a warrantless arrest in a residence for multiple offenses, certain offenses being those for which exigent circumstances did not exist and yet others (or another) for which exigent circumstances in fact exist?" To this inquiry, the court concluded that "where exigent circumstances excuse law enforcement officers from obtaining an arrest warrant for an individual, prior offense for which an arrest warrant was obtainable, but not obtained, may be included in the indictment." In so concluding, the district court found that ongoing nature of the case at hand removed it from the usual "routine" felony

arrest situation, *see Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), where a warrant must be obtained to effect an arrest in a private residence.

We agree with the district court that the ongoing nature of the drug investigation in the immediate case presents significant and peculiar considerations which remove it from the norm of a "routine" felony arrest covered by the *Payton* rule. However, we do not frame the inquiry at hand as broadly as did the district court, nor do we intimate in any way that the mere commission of a subsequent crime for which a warrantless arrest is justified will, in all cases, excuse the prior failure of the government to obtain a warrant for other committed offenses. Rather, as set forth *infra,* our conclusion today is narrowly premised on the particular circumstances of the case at hand.

government's failure to obtain a warrant for Hultgren's arrest on the prior conspiracy charge, upon which he was convicted, is not fatal to the subsequent arrest precipitated by exigent circumstances. We find the ongoing nature of the government's investigation in the immediate case a significant factor in reaching our conclusion. The government is not compelled to effect an arrest upon the occurrence of probable cause to believe a crime has been committed. Rather, the government may await that move in the hope of ferreting out any hitherto unknown individuals involved in the illicit undertakings, gathering additional evidence substantiating the crimes believed to have been committed, or discovering any other offenses in which the suspects are involved. Indeed, in the case of the immediate ongoing investigation, new suspects and evidence of crimes committed became known only later in the investigation. Thus, unlike the case of the "routine" felony arrest, where a given individual and a distinct crime is involved, the fluidity of an ongoing investigation of the distribution of narcotics makes the obtaining of an adequate search warrant more difficult to time in the flow of events. While the possibility of discovering additional participants or evidence of crimes does not negate the warrant requirement, we find that it is one factor to weigh in determining the reasonableness of the government's warrantless arrest.[11] In the immediate case, where the participation of one additional individual, Rondinelli, was not known and probable cause for one additional crime, possession of cocaine, did not arise until the evening of the arrest, this factor bears heavily upon our inquiry.

Also relevant is the fact that the time at which probable cause for the conspiracy arrest arose, March 1, was not far removed from the events of March 2 which precipitated the arrest. While, as found by the district court, sufficient time had existed in which to procure a warrant, the time lapse

11. This distinction is made and explained in 2 W. LaFave, Search & Seizure, § 6.1 at pp. 391–92 (West 1978 & Supp.1983) (footnotes omitted):

A "planned" arrest is one which is made after a criminal investigation has been fully completed at another location and the police make a deliberate decision to go to a certain place, either the arrestee's home or some other premises where he is believed to be, in order to take him into custody. Illustrative are the facts of two Supreme Court decisions: *Chimel v. California* [, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) ] and *Coolidge v. New Hampshire* [, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) ]. Illustrative also are the facts of the Court's recent decisions on the warrant requirement, *Payton v. New York* [, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) ] and *Steagald v. United States* [, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) ]. Courts have understandably been reluctant to accept police claims of exigent circumstances in these situations, for it ordinarily appears that whatever exigencies thereafter arose were foreseeable at the time the arrest decision was made, when a warrant could have readily been obtained. In the "planned" arrest situation, then, the only exception to any existing warrant requirement would be the presence of exigent circumstances prior to the time the officers went out into the field for the purpose of making the arrest.

On the other hand, when the occasion for arrest arises while the police are already out in the field investigating the prior or ongoing conduct which is the basis for the arrest, there should be a far greater reluctance to fault the police for not having an arrest warrant. Here, the presumption should be in favor of a warrantless arrest rather than against it, as the probabilities are high that it is not feasible for the police to delay the arrest while one of their number leaves the area, finds a magistrate and obtains a warrant, and then returns with it.... The basic point is that while the making of an arrest is often thought of as serving the purpose of gaining custody of the criminal, arrest at a particular time will often serve the equally (or perhaps more) important function of terminating a criminal enterprise before the evidence thereof is destroyed or disseminated. Thus, totally apart from the question of whether a need to save evidence should justify a warrantless entry and full search for that evidence, it makes great sense to recognize that frequently an immediate entry to arrest is necessitated so that the defendant can be disabled from destroying or distributing evidence. Once the police are inside, they may uncover that evidence in a search incident to arrest or may find it in plain view, or at a minimum will have custody over the defendant during that critical period while a search warrant is obtained and executed.

was relatively brief. Further, during some of the period at issue, the agents were involved with the informant in planning and preparing for the subsequent day's events as they began to unfold.

■ This is not a case where the exigent circumstances were deliberately created by the government. There is no evidence whatsoever that the government planned or "faked" the precipitating cause of the exigent circumstances, the transmitter failure. The transmitter's failure remains wholly unexplained, and there is no evidence to support a conclusion that its failure was of the government's own making. The failure of the transmitter created the genuine concern that the government informer had been exposed and that his life and those of the agents surrounding the house were in danger. Nor is this a case, as in *Scheffer, supra,* where the drug transaction under surveillance was a controlled delivery as to time and place. In the case at hand, the government acted pursuant to Foster's information, which he had gotten from the suspects. Relevant times were in fact changed from those which had been set. It was not known until the last chapter of events unfolded on March 2 that Hellum's house would be the actual place of delivery. The fact that the exigency might have been foreseeable does not control. *United States v. Mitchell,* 538 F.2d 1230, 1233 (5th Cir. 1976) (en banc), *cert. denied,* 430 U.S. 945, 97 S.Ct. 1578, 51 L.Ed.2d 792 (1977). The important point, as in *Mitchell,* is that the

exigency while perhaps not *unexpected,* had not been *created* by the government. *See United States v. Thompson, supra,* 700 F.2d at 950 n. 4.

■ We therefore conclude that the district court properly found that exigent circumstances justified the warrantless arrests. Relevant to our inquiry of the reasonableness of the warrantless entry under exigent circumstances, in light of the government's failure to obtain a warrant at the earlier practical moment, are the facts that: the home invaded was not that of Hultgren, the arrest was precipitated amidst an ongoing investigation and its attendant uncertainties, the period of time which elapsed before the exigent circumstances arose was relatively short, and the precipitating factors for the arrest were not deliberately created by the government. Accordingly, we conclude that the warrantless arrest of Hultgren was not improper.

### C. *Plain View*

■ Since we conclude that the warrantless arrests of both Rondinelli and Hultgren were justified by exigent circumstances, the motions to suppress the evidence seized at the time of their arrests were properly denied. The record amply supports the district court's finding that the contraband at issue was in plain view of the agents effecting the arrests.[12] It is well established that evidence in plain view of officers properly on the premises is subject to immediate seizure.[13] Further, "[t]he fact

12. The district court found:

Lastly, the defendants challenge the limited search of the premises, which occurred after the defendants had been arrested. This search located the contraband in plain view. The record reveals that Officer Reed was cursorily searching the bedroom to check for other individuals which he reasonably believed to be present. The contraband was in plain view. This Court has determined that Officer Reed had every right to conduct himself as he did. The defendants were scattered throughout the house (after ostensibly trying to flee) and the house had not been under constant surveillance over a period of time. The officers clearly had reasonable grounds to believe that other persons might be present in the residence who might

present a security risk. *United States v. Quigley,* 631 F.2d 415 (5th Cir.1980).

13. In *United States v. Sheikh,* 5th Cir.1981, 654 F.2d 1057, *cert. denied,* 1982, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852, we reiterated the rule regarding searches following an arrest of nearby premises:

Arresting officers have a right to conduct a quick and cursory check of the arrestee's lodging immediately subsequent to arrest ... where they have reasonable grounds to believe that there are other persons present inside who might present a security risk. *See United States v. Diecidue,* 603 F.2d 535, 558–59 (5th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980) (security search of house); *United States v. Bowdach,* 561 F.2d 1160,

that the agents expected to find contraband, which is easily destroyed, on the premises does not preclude operation of the plain view exception to the warrant requirement." *United States v. Thompson, supra,* 700 F.2d at 951 (and cases cited therein). Accordingly, the evidence seized pursuant to the arrest was properly denied suppression.[14]

### III. *Sufficiency of the Indictments*

Appellant Hultgren and Hellums were found guilty of separate counts of conspiracy to possess cocaine with the intent to distribute. On appeal, they complained that their indictments were factually insufficient, alleging that they failed to state the period of time during which the conspiracy was operative.

An indictment charging a violation of 21 U.S.C. § 846 is sufficient "if it alleges a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated...." *United States v. Marable,* 578 F.2d 151, 154 (5th Cir.1978). The appellants relied upon *United States v. Cecil,* 608 F.2d 1294, 1296–97 (9th Cir.1979), for their claim that the indictment returned against them did not sufficiently allege the time during which the conspiracies were operative. The indictment in *Cecil* alleged the time of the conspiracy as "beginning on or before July, 1975, and continuing thereafter until on or after October, 1975...." *Id.* at 1295. The Ninth Circuit found this indictment deficient because it "fail[ed] to allege sufficient

facts to facilitate the proper preparation of a defense." *Id.* at 1297.

In this case, Count 1 of the indictment charges Hellums with conspiracy "commencing on or before February 1, 1982, and continuing thereafter, up to and including, on or about February 2, 1982...." Count 2 charges Hultgren with conspiracy "commencing on or before February 25, 1982, and continuing thereafter, up to and including, on or about March 2, 1982...." These indictments sufficiently allege the operative periods of the conspiracies to permit the preparation of a defense and to avoid double jeopardy problems. Within reasonable limits, the precise date of the offense is not required. *See United States v. Tunnell,* 667 F.2d 1182, 1186 (5th Cir.1982). The indictments at hand are clearly more specific and less open ended than that found deficient in *Cecil.* We therefore conclude that the indictments upon which appellants Hultgren and Hellums were convicted were sufficient.

### CONCLUSION

The district court properly denied appellants Rondinelli and Hultgren's motions to suppress. The warrantless arrests of Rondinelli and Hultgren were justified by exigent circumstances. Further, we conclude that the evidence at issue was properly seized pursuant to the arrest in plain view. Finally, the indictments against appellants Hultgren and Hellums were factually sufficient in their designation of the operative

---

1168–69 (5th Cir.1977) (security search of apartment).

*United States v. Sheikh,* 654 F.2d at 1071. Once the officers are legally inside the lodging, any evidence or contraband that is in plain view is subject to seizure and may be admitted into evidence. *Harris v. United States,* 1968, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067, 1069.

*United States v. Jackson,* 700 F.2d 181, 189 (5th Cir.1983).

*See also Ker v. California,* 374 U.S. 23, 41–43, 83 S.Ct. 1623, 1634–35, 10 L.Ed.2d 726 (1963); *United States v. Thompson,* 700 F.2d 944, 952 (5th Cir.1983); *United States v. Delgado,* 615 F.2d 294, 296–97 (5th Cir.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980).

14. Because we find that the evidence was validly seized *pursuant to* the arrest, we do not reach the question of whether a warrantless search standing alone would have been justified. The district court had found that probable cause for the issuance of a search warrant did not arise until 6:20 on the evening of March 2. It is likely that in light of the short interval between that hour and the time set for the deal to "go down", and the agents' necessary preparations for the scheduled 8:00 p.m. transaction, a conventional warrant could not have been obtained. However, a telephonic search warrant might have been obtainable during that time period. *See* note 9 *supra.* We do not address this question as we find that the search was justified as incident to the proper arrests.

**90**

period of the conspiracies of which those charged were convicted. Appellants' convictions are

AFFIRMED.