**UNITED STATES of America**

v.

**Darryl Lamont FRANKLIN.**

**No. Crim. 99–00238–01.**

United States District Court,
E.D. Pennsylvania.

Aug. 19, 1999.

Robert Goldman, Asst. U.S. Atty., Philadelphia, PA, for U.S.

Glennis L. Clark, Allentown, PA, for Defendant.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

### I. INTRODUCTION

. This memorandum explains the reasons for our rulings from the bench in open court on August 17, 1999 during a pretrial hearing at which the defendant, Darryl Lamont Franklin, defendant's counsel, Glennis Clark, Esquire, and counsel for the government, Robert Goldman, Esquire, were all present. The defendant is charged with Conspiracy to Commit Hobbs Act Robbery and Interference with Commerce by Robbery in violation of 18 U.S.C. § 924(c), Using and Carrying a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c), and Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g). We will outline the facts developed at the hearing and we will then discuss our ruling with regard to each of defendant's pretrial motions.

### II. FACTS

On the afternoon of April 14, 1999, the defendant and another person entered Talisman's Jewelry Store at 12th Street and Green Street, Reading, Berks County, Pennsylvania for the purpose of robbing money and jewelry from the store. Danny Cafoncelli, a store employee, was struck in the head, handcuffed at gunpoint, and thrown down a flight of cellar stairs in the basement of the store. While the defendant was in the store, he pointed a gun at another employee, Louis Cafoncelli, who is the father of Danny Cafoncelli. At that point, Louis Cafoncelli drew a 9mm revolver which he carries. There was an extended struggle during which the defendant was shot. The defendant ultimately fled from the store. The government alleges that approximately $30,000 in cash, jewelry, a handgun and a rifle were taken during the robbery.

The Reading Police responded to the jewelry store robbery. Officer Fizz and

other officers interviewed Louis Cafoncelli who gave a brief description and said that one of the perpetrators may have been shot. While this interview was taking place, Officer Fizz was informed by a bystander that nearby St. Joseph's Hospital was treating a gunshot victim. Officer Fizz immediately responded to the hospital. In the meantime, Louis Cafoncelli was driven to another hospital.

Officer Fizz arrived at the hospital and entered the emergency room where the defendant was on a gurney receiving treatment. The defendant was in pain. On the floor next to the gurney, were bloody articles of clothing which had been cut-up in the process of removing them from the defendant. Officer Fizz asked the defendant what had happened. The defendant told Officer Fizz he had been robbed but he was unable to say where the robbery took place. The defendant gave the false name of Lamont Williams to both Officer Fizz and the hospital. After talking to the defendant, Officer Fizz left him and went outside to confer with another uniformed officer. At that point, the defendant was not under arrest and no police officer was present. Officer Fizz and the other officer learned from hospital security personnel that jewelry had been found outside the hospital in a trash can. At that point, detectives from the Criminal Investigation Division were summoned to the hospital.

Detective Detrick arrived at the hospital in about ten minutes and conferred with the officers present. At that point, the defendant was placed under arrest and a guard was posted at his bedside. At the time of the arrest, Officer Fizz collected the bloody cut-up articles of clothing from the floor because he knew that the hospital would throw them out if he did not take action. Detective Detrick took a photograph of the defendant in the hospital and returned to headquarters where he made a 8–person photographic line-up display. After viewing the photographic line-up display approximately 2 ½ hours later at police headquarters, Louis Cafoncelli identified the defendant as one of the persons who had robbed the jewelry store. Detec-

tive Detrick made a xerox copy of the photographic line-up display before returning the individual pictures which were used in it to their respective files. This xerox copy was received at the pretrial hearing as Government Exhibit 1. For the sake of clarity, the color pictures used for the original line-up were reassembled and placed in a photographic line-up similar to the original line-up. This was received at the pretrial hearing as Government Exhibit 2.

On June 10, 1999, F.B.I. Agent Tom Neeson interviewed a Mr. Colter, who was a prison cellmate of the defendant. Colter told the agent that the key to the jewelry store basement door which led to the cellar steps was still in the defendant's clothing retrieved from the floor of the emergency room. Police personnel subsequently found this key in the defendant's sport coat. The clothing is currently undergoing laboratory analysis.

We had originally scheduled trial for July 19, 1999. We received a Motion for Change of Appointed Counsel which was filed by the defendant on June 29, 1999. In that motion, the defendant alleged that his CJA counsel, Attorney Mark Refowich, had "shown both a deficiency in performance that has resulted in prejudice" to the defendant. We held a hearing on July 9, 1999 and granted the defendant's motion appointing Mr. Glennis Clark as new CJA counsel. We were also forced to continue the scheduled trial which is now set for Monday, August 30, 1999.

## III. *DISCUSSION*

a. *Motion to Suppress Pre–Trial Identification Through Use of Photo Spread*

■ We have examined both Government Exhibit 1 and Government Exhibit 2 in great detail. We find that the photographic line-up display was not unduly suggestive. The defendant was displayed along with seven other black males of reasonably similar appearance. The angle of

438

the camera was somewhat lower in the defendant's picture, however, it was not apparent that he was reclining and, in any event, Louis Cafoncelli was not aware at the time he saw the photographic line-up that the police had located the defendant in a hospital emergency room. The only difference in the defendant's picture was the background which did not match the background of the other photographs. Nevertheless, very little of the background showed. The identification took place only some 2 ½ hours after the robbery. We will not fault the police for this minor difference and do not believe that it made the photographic line-up display unduly suggestive. The court questioned the detective at the pretrial hearing and we are satisfied that Louis Cafoncelli was not given any improper information or hints during the identification process.

■ In an abundance of caution, we note further that even if the photographic line-up display had been unduly suggestive (and it was not), an in-court identification would be appropriate under the standards of *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 2253–2254, 53 L.Ed.2d 140 (1977). We find that the witness, Louis Cafoncelli, had an ample opportunity to observe the defendant initially and while they struggled for a gun on April 14, 1999. The witness gave the police a description of the defendant and successfully identified the defendant in the photographic line-up display some 2 ½ hours after the robbery. The witness was also able to identify the defendant without hesitation at the pretrial hearing before this court. Defendant's motion will be denied.

b.  *Motion to Bar Government From Using Defendant's Prior Criminal Record for Impeachment Purposes*

■ To assist the defense, we have made a tentative ruling by considering Fed.R.Evid. 609(a) and applying the balancing test set forth in Fed.R.Evid. 403. We believe that the defendant's testimony and his credibility could be a very important issue in this case. Paragraph 5 of the defendant's motion states the following:

5. The Defendant is planning to take the stand and offer testimony that at the time of the robbery he was walking on the street in front of the store and he saw a man with a black suit run from the store chased by an elderly man. That elderly man had a gun and fired at the fleeing man. The Defendant claims that he was hit by the bullets and that is all he remembers.

The prior conviction for burglary and assault would have impeachment value in this regard. It appears that defendant completed serving his sentence within the ten year window of Fed.R.Evid. 609(b). Nevertheless, the age of this conviction is of some concern. The defendant is not charged with either a burglary or assault in the present case. Nevertheless, there is some similarity to the present offense in which an assault took place. We will give a cautionary instruction to the jury and on balance we believe that the probative value for impeachment outweighs any prejudicial value. Defendant's motion is deferred until the time of trial.

c.  *Motion to Suppress All Evidence Seized Due to Delay in Time of Arraignment Between Defendant's Arrest and Actual Court Arraignment*

Most of this motion is moot based upon the government's representation that it will not use any statements made by the defendant after his arrest at the hospital. As noted, an officer initially questioned the defendant and then left him alone. Some ten minutes later, the officer conferred with a detective following which the defendant was placed under arrest and articles of his bloody cut-up clothing were retrieved from the floor of the emergency room. We believe that these articles of clothing were properly seized by the police. Had they not been seized, they would have been thrown out.

■ Although the initial investigation in this case was conducted by the Reading Police, the validity of searches and sei-

zures in our court is governed by federal law and not state law. *United States v. Rickus,* 737 F.2d 360, 364 (3d Cir.1984). Warrantless searches are held to be valid when conducted substantially contemporaneous with an arrest and spatially limited to the person of the arrestee, the possessions immediately associated with the person of the arrestee, and the area within the arrestee's immediate control. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). "The justification or reason for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial." *Robinson,* at 476. The police certainly had reasonable grounds to believe the defendant might still be armed. The clothing was properly seized at the time of defendant's arrest so that it could be preserved for use as evidence at trial. We seriously doubt that the defendant had any reasonable expectation of privacy in the hospital emergency room which he shared with all the medical personnel. Mere presence, without an expectation of privacy, will not give standing to contest a search. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 429, 58 L.Ed.2d 387 (1978); *United States v. Echegoyen,* 799 F.2d 1271, 1277 (9th Cir.1986). Furthermore, the clothing was in plain view. Items of evidence spotted in plain view or during a protective sweep incident to arrest may properly be seized. *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968); *United States v. Standridge,* 810 F.2d 1034, 1038 (11th Cir.1987); *United States v. Hultgren,* 713 F.2d 79, 88–89 (5th Cir.1983).

■ We note additionally that a defendant has no expectation of privacy in discarded property. *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988); *United States v. Reicherter,* 647 F.2d 397 (3d Cir.1981). In this case, there is uncontradicted testimony from the police officer that the hospital would have thrown the articles of clothing on the floor out in the garbage. The clothing was contaminated with blood and had been cut up in the process of removing it from the defendant. At no point did the defendant object or assert any ownership rights in this clothing. Under these circumstances, we do not believe that society would accept a claim of privacy in such destroyed clothing as reasonable. The failure of defendant to object is inconsistent with an expectation of privacy. *United States v. Anderson,* 859 F.2d 1171, 1177 (3d Cir.1988). Furthermore, we believe exigent circumstances were present and if the police officer had not immediately seized the articles of clothing, they would have been disposed of by the hospital. Defendant's motion will be denied.

### d. *Motion to Compel Release of 911 Tape and Suppression of Evidence Due to Delay in Arraignment*

The government shall provide the defense with the requested 911 evidence as soon as possible. The request for suppression will be denied consistent with Paragraph c. above, however, the motion to compel release will be granted.

### e. *Motion to Suppress Key*

The key was later found in defendant's clothing as discussed in the facts. Since the police were properly in possession of the defendant's clothing, they were in proper possession of the key. The motion will be denied.

### f. *Motion for Bail*

This matter was not pursued at the time of the pretrial hearing and the motion will be denied.

### g. *Pro Se Motion for Change of Counsel (Redress)*

The defendant filed another *pro se* motion for change of CJA counsel on August 3, 1999. Mr. Glennis Clark is the second CJA lawyer to represent the defendant, and he was appointed after the defendant

**440**

expressed dissatisfaction with his prior CJA lawyer. This change necessitated a continuance of the prior trial date. The defendant had several complaints, which we allowed him to state on the record. Nevertheless, when the court inquired whether or not Mr. Clark should continue to represent him, defendant responded in the affirmative. The motion will be dismissed as moot.

An appropriate order follows.

### ORDER

AND NOW, this 19th day of August, 1999, consistent with the foregoing Opinion, it is hereby **ORDERED,** as follows:

1. Defendant's Motion to Suppress Pre–Trial Identification Through Use of Photo Spread filed June 15, 1999 is **DENIED.**

2. Defendant's Motion to Bar Government From Using Defendant's Prior Criminal Record for Impeachment Purposes filed June 15, 1999 is **DENIED** at this time without prejudice to the right of the defense to renew this motion at the time of trial.

3. Defendant's Motion to Suppress All Evidence Seized Due to Delay in Time of Arraignment Between Defendant's Arrest and Actual Court Arraignment filed June 18, 1999 is **DENIED.**

4. Defendant's Motion to Compel Release of 911 Tape and Suppression of Evidence Due to Delay in Arraignment filed June 18, 1999 is **DENIED IN PART** and **GRANTED IN PART.**

5. Defendant's Motion to Suppress Key filed June 30, 1999 is **DENIED.**

6. Defendant's Motion for Bail filed June 30, 1999 is **DENIED.**

7. Defendant's *Pro Se* Motion for Change of Counsil (Redress) filed August 3, 1999 is **DISMISSED AS MOOT.**